## IPSWICH MILLS *vs.* COUNTY COMMISSIONERS OF ESSEX.

A statute authorizing a city to build waterworks provided that any town on the line of the works might use the water on paying an equitable compensation therefor; that no application for damages for the taking of any water rights should be made till the water was actually diverted; and that any person whose water rights were thus affected might apply for damages within one year "from the time when the water is first actually withdrawn or diverted." By the original construction of the works, the flow of water to a mill was diminished, but no serious inconvenience was felt by the mill owner until more than a year afterwards, when, by reason of an additional diversion of the water to supply

a town on the line of the works, the flow of it to his mill ceased altogether, and he then for the first time applied for damages. *Held,* that his right to such an application was limited to the year after the original construction of the waterworks.

PETITION by the owners of a mill and water privilege on Ipswich River, for a writ of *certiorari* to quash proceedings of the county commissioners of Essex refusing their application made on March 15, 1871, for the assessment of their damages sustained through the diversion of waters of Wenham Pond from that river by the city of Salem in constructing and maintaining its waterworks under the St. of 1864, *c.* 268; § 15 of which statute provided that " the inhabitants of any town upon the line of the works authorized by this act, upon the application of its board of selectmen, shall be entitled to a reasonable use of the water upon paying an equitable compensation therefor." The respondents answered that the petitioners were in no way injured or aggrieved by the proceedings referred to, and were not entitled to the writ. The case was reserved by *Morton,* J., on the petition and answer, for the determination of the full court, and is stated in the opinion.

*C. A. Sayward,* for the petitioners.

*J. A. Gillis,* for the respondents.

AMES, J. By the St. of 1864, *c.* 268, the city of Salem was authorized, for the purpose of supplying its inhabitants with pure water, to take, hold and convey into and through that city the waters of Wenham Pond, and the waters which flow into and from the same, and any water rights connected therewith. In the exercise of the authority so given, they have diminished the supply of water flowing from the pond to the petitioners' works, although no serious inconvenience from this cause was felt by them until July 1870, being about a year and seven months after the completion of the waterworks, and after they were put in operation. The line of the works lay through the town of Beverly, and supply pipes were afterwards extended into various parts of that town, and since October 1870 water has been supplied to its inhabitants, in accordance with the terms of the fifteenth section of the above named statute ; the diversion of water from the petitioners' works being thereby greatly increased, so that their

supply from that source was entirely cut off. The eleventh section of the statute is in these words : " No application shall be made to the county commissioners for the assessment of damages for the taking of any water rights, until the water is actually withdrawn or diverted by said city. Any person or corporation, whose water rights are thus taken or affected, may apply as aforesaid at any time within one year from the time when the water is first actually withdrawn or diverted." As the petitioners made their application within one year from the time when the supply to the inhabitants of Beverly caused an increased withdrawal or diversion of the water from the pond, they insist that it was seasonably made, and is not barred by the limitation prescribed by the statute.

The statute was plainly intended to provide not merely for the convenience of Salem, but also to furnish a like supply to all other towns upon the line of the works, that should apply for it and make an equitable compensation therefor. It had in view not merely the present wants of all these municipal corporations, but also their future and prospective wants, which of course must go on increasing with the increase of their population. We cannot say that these future wants may not increase to such an extent as ultimately to require the use of all the water that the pond can furnish at every season of the year, and we cannot doubt that the legislature intended to authorize a corresponding increased use of the waters granted. If every person whose water rights are thereby affected is to be understood as having a new claim of damages for every increase in the amount of water actually appropriated by the city, it is easy to see that the subdivision of claims, and the frequent renewal of litigation, will lead to much inconvenience, and substantially deprive the city of all the benefit of the limitation intended by the statute. We think that the water rights of these petitioners were " taken or affected " within the meaning of the eleventh section of the statute, as soon as the city had constructed works capable of appropriating or conveying the waters which it was authorized to take ; and that the " first " actual withdrawal or diversion of the water, under the act, is the point of time from which the period of lim

itation begins to run against the petitioners' claim for damages. We can see no ground for saying that the term of limitation is opened or extended by any increase in the amount of water actually withdrawn; but in this, as in all other like cases, the indemnity provided by the statute is intended to cover future and prospective as well as immediate damages. See *Call* v. *County Commissioners*, 2 Gray, 232; *Dickenson* v. *Fitchburg*, 13 Gray, 546. We therefore find no error in the decision of the commissioners, and must order the    *Petition dismissed.*