JANE F. WOODWARD & others *vs.* CITY OF WORCESTER.

Worcester.   October 6. — Nov. 4, 1876.   COLT & MORTON, JJ., absent.

Under the St. of 1867, *c.* 106, § 2, providing that the city council of Worcester may, for the purposes of sewerage, fix the boundaries of certain brooks, and among them Mill Brook, and may "alter, change, widen, straighten and deepen the channels of said brooks, and remove obstructions therefrom, and may use and appropriate said brooks, cover them, pave and enclose them in retaining walls, so far as they shall adjudge necessary for purposes of sewerage, drainage and the public health," the city council adjudicated that it was necessary, for the purposes of sewerage, to relocate Mill Brook between two certain points, and that the new channel should be excavated, deepened, widened, straightened, paved, walled and inclosed. In building the new sewer, an opening was left by the defendant in the retaining walls at a point above the plaintiff's estate, and by artificial means a portion of the sewage was diverted into the original channel of the stream, over a strip of land belonging to the defendant, upon the plaintiff's estate. The sewage so diverted was composed of filth and offensive matter, which at times emitted noxious odors, so as to interfere with the use and enjoyment of the plaintiff's estate, and to depreciate its value, and constantly increased in volume from the introduction of new drains and pipes into the sewer. *Held,* that the original channel of Mill Brook as a sewer, between the two points, had ceased to exist; that the defendant had no right to divert sewage upon the plaintiff's land, to his injury; and that a bill in equity would lie to restrain the diversion.

BILL IN EQUITY to restrain the defendant from turning the sewage matter of a part of the Mill Brook sewer, in Worcester, upon the plaintiffs' land, and for damages, and for further relief. Hearing upon the bill, answer, replication, and a report of a master, before *Devens,* J., who reserved the case for the consideration of the full court.   The facts appear in the opinion.

*G. F. Hoar & T. L. Nelson,* for the plaintiffs.

*F. T. Blackmer,* for the defendant.

LORD, J.   The city of Worcester, for the purposes of sewerage, has the right by the St. of 1867, *c.* 106, to fix the boundaries of certain brooks, among which is Mill Brook, and may " alter, change, widen, straighten and deepen the channels of said brooks, and remove obstructions therefrom, and may use and appropriate said brooks, cover them, pave and enclose them in retaining walls, so far as they shall adjudge necessary for purposes of sewerage, drainage and the public health."

The precise question submitted for our determination is quite simple.   The course of Mill Brook southerly from Green Street till it crossed Cambridge Street was very circuitous.   From

Front Street southerly to Green Street, the defendant had appropriated the bed of Mill Brook as a sewer, under an adjudication of the city council that it was necessary to fix the boundaries thereof, to straighten and deepen the channel, and to inclose the same in retaining walls, and to appropriate, establish and lay out the same as a main drain and common sewer. By authority of the city council, the boundaries of the brook thus located were fixed with great definiteness and accuracy. Subsequently, in June, 1869, the city council adjudicated that it was necessary, for the purposes of sewerage, drainage and the public health, that the location of Mill Brook between Green Street and Cambridge Street be changed from its then circuitous location, and that it be located along and parallel with Millbury Street, between the said Green and Cambridge streets, and that the new channel be excavated, deepened, widened and straightened, and that the same be paved, walled and inclosed by an arch or retaining walls, at such time thereafter as the city council may adjudge it fit, and that the same be now appropriated, established and laid out, to be hereafter constructed and maintained as a main drain and common sewer. Thereupon the city council proceeded to define the boundaries of said Mill Brook, and to fix and establish the same with great precision, in the new location between said Green and Cambridge streets, thus making a continuous and nearly straight sewer from Front Street across Green Street to Cambridge Street. The defendant then constructed the main sewer from Front Street to Cambridge Street. In doing this, however, it caused an opening to be made in the main drain at or near Green Street, and, by artificial means, caused a portion of the contents of the sewer to follow what had previously been the channel of Mill Brook, while the remaining portion continued its way through the sewer as newly constructed to Cambridge Street. This is the alleged wrong for which remedy is sought by the plaintiff's bill.

The defendant claims the right, at least while its system of sewerage is in process, both to use the former bed of Mill Brook and the new location of the same for the purposes of drainage. The power of the defendant over the brook for the purposes of sewerage seems to be limited only to the use to which it may be applied, and by the adjudication of the city council of its neces-

sity. The boundaries may be fixed; the channel may be altered, changed, widened, deepened and straightened; and the brook may be used and appropriated, covered, paved, and inclosed in retaining walls. It is not necessary to inquire whether it is within the authority of the city council to appropriate the whole or any portion of the brook as a sewer in its natural condition; for its whole authority is based upon an adjudication of necessity, and there has been no adjudication of a necessity to use the brook in its natural condition between Green Street and Cambridge Street. On the other hand, there has been an adjudication of the necessity of changing the location of the channel of the brook, and such change has been made. The power is given to alter and to change the channel. Whether one of these words is intended to apply to such alteration or change of the channel as may be made within the limits of its natural bed, and the other to so alter or change it as to make the new channel wholly outside of the original bed of the brook, it is unnecessary to inquire, because the court is of opinion that, upon a proper adjudication, the entire bed of the brook may be so altered or changed as to be wholly outside of its original limits. When the bed of the brook has thus been changed, the original bed of the brook ceases to exist as such. The city council having adjudged the necessity to change the entire bed of the brook between Green Street and Cambridge Street, and the defendant having in fact made the change and constructed the new channel, there remains no other channel or bed of Mill Brook except the new one thus made, and the old and circuitous bed has ceased to exist. It is therefore quite clear, that the defendant has no right, by an opening in any portion of the drain as laid, to discharge the whole or any portion of the sewage upon the lands of an adjoining proprietor to his injury, though the original bed of the brook may have been upon such land.

This leads to the inquiry, Do the facts found in this case show such an injury to the adjoining proprietor as to authorize the interference of a court of equity? We are of opinion that they do. It is found, that stones were taken from the main sewer at the point complained of, and so laid across the interior of the sewer as to operate as a dam across a portion of the drain, for the purpose of turning a part of the sewage out of the drain upon the

land of the plaintiffs, that they so operated, and did so divert a portion of the sewage; that such sewage at times emits offensive and noxious odors to such an extent as to interfere with the use and enjoyment, and to impair and depreciate the estate of the plaintiffs; that sewage has increased, and is constantly increasing, by the introduction of new drains and pipes into the main sewer. If this case were like *Fay* v. *Whitman*, 100 Mass. 76, in which the plaintiff, in an action of tort, complained that the defendant in the use of his adjoining land caused a nuisance to the plaintiff's estate, by reason of noxious and offensive smells caused by the business of the defendant, we think, within the principles recognized in that case, the plaintiffs would be entitled to relief; but in certain essential particulars this case differs from that. In this case, the act itself is a tortious act; filth and offensive matter is illegally turned upon the plaintiffs' soil, which, in itself, without regard to the noxious and offensive odors, is an invasion of the plaintiffs' right, and for every act of which a separate action at law could be maintained. It is no answer to the plaintiffs' bill that the defendant owns a strip of land by the side of the main sewer, over which the sewage must first pass before it enters upon the plaintiffs' land. It is immaterial whether the defendant turns the sewage immediately upon the plaintiffs' land from the main sewer, or whether it is carried across their land by a conduit or merely by gravitation. The defendant having the control of the contents of the sewer, and bound to conduct it safely through its drains, has no right to stop it there and to cause it to flow upon the plaintiffs' land to their injury. The case of *Washburn & Moen Manufacturing Co.* v. *Worcester*, 116 Mass. 458, has no bearing upon this question. In that case the defendant did what the Legislature had authorized it to do, and the remedy of the plaintiff, in the absence of negligence or misconduct on the part of the defendant, was not by action at law or suit in equity, but under the statute which authorized the acts done, and provided the mode of ascertaining damages sustained by any person in doing the work as authorized by the statute.          *Decree for the plaintiffs.*