THOMAS W. EDWARDS v. THE ALLOUEZ MINING COMPANY.

*Injunction to Restrain a Provoked Injury Denied.*

Injunctions are to prevent irreparable mischief and stay consequences that could not be adequately compensated; their allowance is discretionary and not of right, calls for good faith in the petitioner, and may be withheld if likely to inflict greater injury than the grievance complained of.

It is an irreparable injury to create intolerable smells near the homestead of a neighbor, or undermine his house by excavations, or cut him off from the street by buildings or ditches, or otherwise destroy the comfortable, peaceful and quiet occupation of his homestead, also to break up his business, destroy its good will and inflict damages that cannot be measured because the elements of reasonable certainty are wanting in computing them. A nuisance may threaten irreparable injury even to unoccupied land where it is devoted to some special use or where the person causing the nuisance is irresponsible.

Where, by inviting an injury, one places himself in a position to call for an equitable remedy, his motives can be inquired into, even though he grounds himself on strict legal right.

A man bought for speculation certain bottom lands upon which large quantities of sand were being deposited by a stream which operated a stamp-mill higher up. He put a valuation upon the land of from three to five times what it cost him and tried to sell it to the corporation that owned the mill, but it declined to buy. Then he prayed for an injunction to restrain the corporation from sanding his land and polluting the stream. *Held* that an injunction would not lie, and that the speculator was entitled to such remedy as the law would give him and no more.

Appeal from Washtenaw, the case having been transferred from Keweenaw. Submitted October 17, 1877. Decided January 9, 1878.

INJUNCTION. The writ was denied and complainant appealed. The facts are in the opinion.

*Ball & Owen* and *G. V. N. Lothrop* for complainant. Injunction to restrain a permanent injury to a man's land is a settled method of equitable relief, High. on Inj., § 485; 2 Story's Eq. Jur., § 928; Wood on Nuisances, pp. 308, 353, 354; Hilliard on Inj., p. 280, n. *a.*; *Livingston v. Livingston*, 6 Johns. Ch., 497; *McCord v. Iker*, 12 Ohio, 387. Continuous flowing of water, sand and slime upon land, destroying its timber and unfitting it for cultivation is a substantial appropriation of the land, and no remedy is complete which does not restrain it. *Tyler v. Wilkinson*, 4 Mason, 397; *O'Reilly v. McChesney*, 3 Lans., 282; *White v. Forbes*, Walk. Ch., 112; *Dickinson v. Canal Co.*, 9 Eng. L. & Eq., 513; *Gardner v. Newburgh*, 2 Johns. Ch., 161; *Wood v. Waud*, 3 Exch., 748; *Hendrick v. Cook*, 4 Ga., 241; *Van Bergen v. Van Bergen*, 3 Johns. Ch., 282; *Pennsylvania v. Wheeling Bridge Co.*, 13 How., 564; *Hammond v. Fuller*, 1 Paige, 197; *Corning v. Troy I. & N. Factory*, 40 N. Y., 191; 2 Story's Eq., § 929 b.

*W. D. Williams* for defendant in error. An injunction is never granted against conscience, *Hine v. Stephens*, 33 Conn., 497; *Sheldon v. Rockwell*, 9 Wis., 166; *Warden v. Supervisors*, 14 Wis., 479; *Cobb v. Smith*, 16 Wis., 661; *Richards' Appeal*, 57 Penn. St., 105; and the court will balance the inconveniences likely to come from granting it, *Wood v. Sutcliff*, 8 Eng. L. & Eq., 217; *Hilton v. Granville*, 1 Cr. & Ph., 297. See also *Snow v. Parsons*, 28 Vt., 459; *Jacobs v. Allard*, 42 Vt., 303; *Jerome v. Ross*, 7 Johns. Ch., 315; *McElroy v. Goble*, 6 Ohio St., 187; *Weise v. Smith*, 3 Or., 445; *Huckenstine's Appeal*, 70

Penn. St., 106; *Dubose v. Levee Com'rs*, 11 La. Ann., 165; *Eason v. Perkins*, 2 Dev. Ch., 38; *Bradsher v. Lea*, 3 Ired. Eq., 301; *Keeny, etc., Mfg. Co. v. U. Mfg. Co.*, 39 Conn., 576; *Hayes v. Waldron*, 44 N. H., 585; *Bear River Co. v. York Mining Co.*, 8 Cal., 327; *Cary v. Daniels*, 8 Met., 477; *Hinckley v. Nickerson*, 117 Mass., 213; *Merrifield v. Worcester*, 110 Mass., 216; *Erie v. Canfield*, 29 Mich., 484; *Dumont v. Kellogg*, id., 420; *Robinson v. Baugh*, 31 Mich., 295; *Fox v. Holcomb*, 32 Mich., 494; *Parker v. Winnipiseogee*, 2 Black, 545; *Welton v. Martin*, 7 Mo., 307; *Gould v. Boston Duck Co.*, 13 Gray, 452; *Springfield v. Harris*, 4 Allen, 496; *Thornton v. Towns*, 34 Ga., 125; *Davis v. Winslow*, 51 Me., 289.

COOLEY, J.    This is an injunction bill, and the facts are very simple.    Defendant at a cost of some sixty thousand dollars erected a stamp mill on the banks of Hill creek in the year 1874, and has since been operating it for copper mining purposes.    As a result of its operations large quantities of sand are carried down by the waters of the stream and deposited on the bottom lands below.    The evidence leads to the belief that it would be impossible to carry on the mining operations of the defendant with profit unless this is permitted.    The year following the erection of defendant's mill, complainant purchased a piece of land through which the creek runs a short distance below the mill, and upon which the mill as operated was depositing sand.    The land was not purchased for use or occupation, but as a matter of speculation, and apparently under an expectation of being able to force defendant to buy it at a large advance on the purchase price.    It was offered to defendant soon after the purchase, and though no price was named, the valuation which has been put upon it by complainant and his witnesses is from three to five times what it cost him, and this perhaps gives some indication what his expectations were.    The real value of the land except as a convenience in the business of defendant would seem

to have been small.    When defendant declined to pur-
chase, this bill was filed.    The prayer is that defendant
be restrained from running or depositing its stamp sand
on complainant's land, and from polluting the waters of
the stream by its operations.    This is a short statement
of so much of the case as is material to what follows.
The circuit judge refused the injunction prayed for, but
ordered a reference to a jury for an assessment of dam-
ages.

There is no doubt that the operations of defendant,
whether they inflict any serious injury on complainant
or not, amount in effect to an appropriation of that por-
tion of his property upon which sand is being deposited.
*Ashley v. Port Huron,* 35 Mich., 296; *Pumpelly v. Green
Bay Co.,* 13 Wall., 166; *Arimond v. Green Bay Co.,* 31
Wis., 316; *Rowe v. Portsmouth,* 56 N. H., 291; *Wood-
ward v. Worcester,* 121 Mass., 245.    It follows and is
beyond question that complainant sustains a legal injury
for which he is entitled to suitable redress.    The only
question on this record is, whether he is entitled to the
special redress he seeks, namely, an injunction.

An injunction is not a process to be lightly ordered in
any case.    Where the effect will be to present to the
owners of a valuable mill the alternative either to pur-
chase complainant's lands at his own price or to sacri-
fice their property, any court having the power to order
it ought very carefully to scrutinize the case and make
sure that equity requires it.    In theory its purpose is to
prevent irreparable mischief; it stays an evil the conse-
quences of which could not adequately be compensated
if it were suffered to go on.    *Gilbert v. Showerman,* 23
Mich., 448; *Bemis v. Upham,* 13 Pick., 169; *Wason v.
Sanborn,* 45 N. H., 169; *Cockey v. Carroll,* 4 Md. Ch.,
344; *Nicodemus v. Nicodemus,* 41 Md., 529; *Burgess v.
Kattleman,* 41 Mo., 480; *Owen v. Ford,* 49 Mo., 436;
*Morris etc., Co. v. Central R. R. Co.,* 16 N. J. Eq., 419;
*Pettibone v. La Crosse etc., R. R. Co.,* 14 Wis., 443;
*Hine v. Stephens,* 33 Conn., 497; *Rhodes v. Dunbar,* 57

Penn. St., 274; *Richards' Appeal*, id., 105; *Harkinson's Appeal*, 78 id., 196; *State v. Judge*, 16 La. Ann., 233; *Goodell v. Lassen*, 69 Ill., 145. The writ "is not *ex debito justitiæ*, for any injury threatened or done to the estate or rights of a person, but the granting of it must always rest in sound discretion, governed by the nature of the case." *Enfield Toll Bridge Co. v. Connecticut River Co.*, 7 Conn., 50. As is said in another case, "Injunction is not of right but of grace; and to move an upright chancellor to interpose this strongest arm of the law, he must have not a sham case, but a well grounded complaint, the *bona fides* of which is unquestioned, or capable of vindication if questioned." *Kenton v. Railway Co.*, 54 Penn. St., 454. "There is no power," says Mr. Justice Baldwin, "the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, or is more dangerous in a doubtful case than the issuing of an injunction. It is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages." *Bonaparte v. Camden etc., R. R. Co.*, Baldw., 218. All the cases referred to show that the court looks beyond the actual injury to contemplate the consequences, and however palpable may be the wrong, it will still balance the inconveniences of awarding or denying the writ, and adjudge as these may incline the judicial mind. *Grey v. Ohio etc., R. R. Co.*, 1 Grant, 412; *Varney v. Pope*, 60 Me., 192; *Bosley v. M'Kim*, 7 Har. & J., 468. Even in the case of a palpable violation of a public right to the annoyance of an individual, he must show the equity which requires this summary interference as the only adequate means of obtaining justice. *Sparhawk v. Union Passenger Railway Co.*, 54 Penn. St., 401.

What is the irreparable injury which is done or threatened in this case? We can see very plainly what it is in the case of many nuisances, and the equity of this particular remedy is then very manifest. If one man

creates intolerable smells near his neighbor's homestead, or by excavations threatens to undermine his house, or cuts off his access to the street by buildings or ditches, or in any other way destroys the comfortable, peaceful and quiet occupation of his homestead, he injures him irrevocably. No man holds the comfort of his home for sale, and no man is willing to accept in lieu of it an award of damages. If equity could not enjoin such a nuisance the writ ought to be dispensed with altogether, and the doctrine of irreparable mischief might be dismissed as meaningless. A nuisance which affects one in his business is less in degree, but it may still be irreparable, because it may break up the business, destroy its good will and inflict damages which are incapable of measurement because the elements of reasonable certainty are not to be obtained for their computation. Even in the case of unoccupied land a nuisance may threaten irreparable injury, where it is devoted in its purchase to some special use, or where the person causing the nuisance is irresponsible, and in some other cases which need not here be specially mentioned.

The land injured in this case was bought by the complainant with a preconceived purpose to force a sale of it upon the defendant. He did not want it for a homestead or for business property, but for the money he could compel the defendant to pay for it. It may be said that no one is concerned with the motives of another in making a lawful purchase, or in doing any other lawful act; and this is true as a rule, but it is not true universally. Wherever one keeps within the limits of lawful action, he is certainly entitled to the protection of the law, whether his motives are commendable or not; but if he demands more than the strict rules of law can give him, his motives may become important. In general it must be assumed that the rules of the common law will give adequate redress for any injury; and when the litigant avers that under the circumstances of his particular case they do not, and that therefore the gra-

cious ear of equity should incline to hear his complaint, it may not be amiss to inquire how he came to be placed in such circumstances. If a man invites an injury, he may still have his redress in the courts of law, but his prayer for the special interposition of equity on the ground that what he invited and expected was about irreparably to injure, would not be likely to trouble the judicial conscience very much if it were wholly ignored. The Supreme Court of Connecticut not long since felt compelled, under circumstances very similar to those shown by this record, to look into the motives of a corporation in making a purchase with a view to litigation, and to deny relief upon the ground that an acquisition of land for such a purpose was *ultra vires*. *Occum Co. v. Sprague Manufacturing Co.*, 34 Conn., 540. We cannot say in this case that complainant had no right to buy, but we can say, as we do, that when he comes demanding strict legal rights, he shall have those, but no more. He is entitled to his rights under the rules of law, but he is entitled to nothing of grace.

The land having been bought to make money from by sale, a legal award of damages for an injury to it, is in furtherance of the purpose of the purchase, and therefore a suitable and a just redress. Defendant is not alleged to be irresponsible, and a jury it is supposed will award all that is reasonable. If complainant wants more than is reasonable, he has a right to obtain it under the rules of law, but he cannot demand the aid of equity in a speculation. If in speculative language he has a corner in real estate, there is no greater reason why he should have the assistance of an injunction to aid his schemes than there would be if on the produce exchange he had effected a corner in grain. Without the writ in either case he may be the sufferer, but he suffers nothing for which damages cannot compensate him. The elements of irreparable injury are entirely wanting to his case.

Our conclusion is that the circuit court gave the complainant all he was entitled to when the case was sent

to a jury. The decree must therefore be affirmed with costs.

GRAVES, J. I concur in affirming the decree.

CAMPBELL, C. J. It appears without doubt in this case that defendants, without color or claim of right, are keeping up a continuous series of invasions upon complainant's freehold by using a running stream as a means of transporting sand upon his bottom land in quantities sufficient to bury it. The same course of conduct defiles and silts up the stream, rendering it useless to him for any purpose of business or convenience. It is equivalent in mischief to taking away or destroying his property in the land and his rights in the water.

I cannot concur in the doctrine that any one's rights of this kind are subject to judicial discretion. The rights to equitable relief, where that is the only adequate remedy, are as absolute as to legal relief. The one remedy is no more sacred than the other, and no more capable of lawful denial. If the defendants were to take possession of the land in question by putting a tenant upon it, no power would exist any where to deny complainant his possessory remedy. Where the same sort of wrong is done by indirect assumption of possession so that all the advantages of actual possession are enjoyed by the wrongdoer without going in person upon the soil, there is no reason for denying the only remedy which can secure to complainant the future enjoyment of his own estate, which would not as justly authorize the refusal of a possessory remedy in the other case. And no remedy at law is adequate for such a grievance as is here complained of, because no legal remedy can secure complainant the use of his own property.

It is not claimed, and there is certainly no ground for claiming, that there is any equitable estoppel. Defendants have never acted on any belief that they had a right to do what they are doing. They have always

known they were wrong-doers, and have simply presumed on the patience of their neighbors, and neglected to purchase what they could originally have purchased if they had chosen.    Neither does the proof show any very serious difficulty in the way of avoiding the mischief, although I do not regard this as at all essential.

It is not denied by complainant that he purchased for speculative purposes.    As every one has a right to do this if he chooses, it cannot in any way lessen his claims to protection.    It would be, I think, a very dangerous principle to hold that a civil wrong can be lessened by the motives of the party injured, so long as he has done no wrong himself.    The property of one man is as much entitled to protection as that of another,—not because he bought it or intends to use it without selfish motives, but because it is property.    Any attempt to discriminate would, in my opinion, leave private interests subject to a discretion which no man could calculate upon, and make the judicial conscience the only arbiter of every one's rights.    Some courts may have acted on this notion, but it seems to me that such precedents are unjust, and are not consistent with law or equity as we have received them under our constitutional guaranties of protection to person and property.

I think the court below should have granted a perpetual injunction as prayed.

MARSTON, J., did not sit in this case.