## WORCESTER GAS LIGHT COMPANY *vs.* COUNTY COMMISSIONERS.

Worcester.    Oct. 4, 1884. — Jan. 14, 1885.   C. ALLEN & COLBURN, JJ., absent.

An order of the city council of a city, laying out a section of a stream as a sewer, followed by the construction of sewers through which the water is afterwards discharged, is a taking of the waters of the stream, within the Sts. of 1867, *c.* 106, and 1871, *c.* 354, although the water is returned to the natural channel of the stream, and, until within two years of the filing of a petition for damages, continues to flow through the petitioner's premises.

PETITION for writ of mandamus, filed May 9, 1882, to compel the respondents to entertain a petition, filed November 18, 1881, for an assessment of damages for the taking by the city of Worcester of alleged water rights of the petitioner in Mill Brook.

Hearing before *Devens*, J., who reported for the consideration of the full court the following case:

Mill Brook, a natural stream, with its tributaries, originally flowed through the petitioner's premises, which lie between Green Street and Cambridge Street, in Worcester. Quinsigamond Avenue lies between Green Street and the petitioner's premises. Under the authority of the St. of 1867, c. 106, the city, at different times, took and converted various tributaries and sections of Mill Brook for sewerage purposes. On June 28, 1869, it passed an order laying out the section of said brook between Green Street and Cambridge Street as a sewer; and, under said order, the water flowing in the brook north of Green Street was turned in that year into a new channel, and diverted from the petitioner's estate.

Piedmont Brook, a tributary, originally emptied into Mill Brook between Green Street and Cambridge Street and north of Quinsigamond Avenue and of the petitioner's premises. More than two years prior to March 7, 1881, it had been taken by the city for sewerage purposes, but its waters so taken continued to be discharged through sewers laid by the city into the old natural channel of Mill Brook near their point of natural discharge, and, until March 7, 1881, continued to flow along said channel into and through the petitioner's premises, and supplied the petitioner with drainage and water facilities in its manufacturing processes. On said March 7, the waters so flowing in said channel were turned into a sewer, then completed, in Quinsigamond Avenue, and were diverted from the petitioner's premises. This sewer was built under an order of the city.

No notice of the laying out of any of said sewers was served upon the petitioner, although the orders laying them out directed the city clerk to serve notice upon all persons and corporations interested. The officers of the petitioner testified that they had no knowledge of the location of said sewers, or any diversion of their stream, prior to said March 7.

If the petition to the county commissioners was filed in season, it was to stand for hearing; otherwise, to be dismissed.

*R. Hoar & C. F. Aldrich*, for the petitioner.

*F. P. Goulding*, for the respondents.

HOLMES, J.   It is a little hard to see how anything is left open to be argued on this report, for it appears that, more than two years before the petitioner took any steps to have its damages assessed, Piedmont Brook "had been taken by the city for sewerage purposes." The statement that the brook had been taken means taken under the St. of 1867, *c.* 106, and therefore imports that whatever was necessary to "appropriate" the brook, within the meaning of § 2 of the act, had been done. It would seem equally to signify a "taking" from which the two years would begin to run under the St. of 1871, *c.* 354, § 5. But, if we are to assume that the taking consisted only of the vote of the city council, followed by the construction of sewers through which the water was discharged thereafter, we are of opinion that this was sufficient to set the two years running, even if we assent to the petitioner's argument that an actual taking *in pais* was necessary in addition to the vote, and notwithstanding the fact that the water was returned to the natural channel of Mill Brook above the petitioner's land, and continued to flow through its premises until within two years of the filing of this petition.

An actual withdrawal of the water is not necessary to constitute an actual taking, unless it is expressly required. The case is not like a claim to a prescriptive right which had its beginning in wrong. There the extent of the prescriptive right gained might very well be measured by the extent of the actual wrong done for the necessary time, unaffected by the extent of the claim of right under which it was done. *Horner* v. *Stillwell,* 6 Vroom, 307. But here the city could lawfully gain any right in the stream which it chose to take, and when it did a public act of dominion which was of permanent effect, and which depended on a vote for its justification, the character and extent of the dominion assumed were determined by the vote to which the act thus necessarily referred. This almost follows from *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363, where a partial withdrawal of the water set the time of limitation running as to the whole.

The petitioner admits that notice to it was not necessary under the act. *Cambridge* v. *County Commissioners*, 6 Allen, 134.

As the opinion which we have expressed disposes of the case, we do not consider the effect of changing the channel of Mill Brook so that it no longer passed through the petitioner's land. *Woodward* v. *Worcester*, 121 Mass. 245.

*Petition dismissed.*