## WASHBURN AND MOEN MANUFACTURING COMPANY *vs.* CITY OF WORCESTER.

Worcester.   October 2, 1890. — May 18, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Watercourse — Change to Common Sewer — Riparian Proprietor — Prospective Damages.*

If a city, acting under the authority of a statute, duly appropriates a brook for a main drain and common sewer, a mill owner upon a river into which the brook flows, who has been wont to use the water of the brook to furnish power for his mill, is entitled, upon a petition duly filed under the statute for damages caused by the action of the city, to go to the jury upon the question how much less valuable is such water for use in connection with his land by being made to flow through a common sewer instead of as before; and in estimating the damages the prospective change in the quality and condition of the water, if any, may be taken into account.

PETITION to the Superior Court, to recover damages for the taking of the waters of Mill Brook in the respondent city. Trial in the Superior Court, before *Blodgett*, J., who refused to rule as requested by the petitioner, and ordered a verdict for the respondent; and the petitioner alleged exceptions. The facts appear in the opinion.

*T. G. Kent & G. T. Dewey*, for the petitioner.

*F. P. Goulding*, for the respondent.

KNOWLTON, J.   The St. of 1867, c. 106, § 2, gives the city council of Worcester authority to "fix the boundaries of Mill Brook," and other brooks therein named, to "alter, change, widen, straighten, and deepen the channels of said brooks and remove obstructions therefrom," and to "use and appropriate said brooks, cover them, pave and enclose them in retaining walls, so far as they shall adjudge necessary for purposes of sewerage, drainage, and the public health." Section 3 authorizes the city council to take and hold land, water rights, dams, or other real estate for the purposes above mentioned, and provides for the recovery of damages by persons injured by the exercise of authority under this statute. The St. of 1871, c. 354, § 5, extended the time within which applications for damages might be made, by persons whose property had been taken or injured, to two

years from the passage of the act, and the petition to the county commissioners was filed before the expiration of that time. Under these statutes, the petitioner may recover any damages which it suffered by the action of the city council, under the provisions of the above mentioned act, at any time prior to the filing of the petition.

The petitioner is a mill owner on the Blackstone River, of which Mill Brook is a tributary, and it has been accustomed to use the water flowing from Mill Brook to furnish power for its mill. The city council, acting under the authority of this statute, passed five different votes or orders before the petition was filed, all having reference to different parts of Mill Brook, and, in accordance with the terms of the orders, changed the course and diverted the waters of the brook in various places, and returned the waters more or less affected by sewage to the natural channel at a point above the land and mill of the petitioner, and above the point where the natural channel of Mill Brook joined the Blackstone River. The waters of the stream in that condition came down into and through the works of the petitioner, and the waters were injuriously affected by the pollution from sewage. By the terms of each of these votes, the portion of the brook to which the vote related was appropriated to be used and forever after maintained as a main drain and common sewer. Long after the filing of the petition, by a vote passed March 8, 1880, the waters of Mill Brook were diverted from the mill of the petitioner, and made to flow into the river at a point below the petitioner's land.

It is contended, in behalf of the petitioner, that the several votes of the city council passed before the petition was filed deprived the petitioner of all property in the brook, and entitled it to damages as for a diversion of the whole of the brook from its premises. On the other hand, it is contended for the respondent that the St. of 1867, c. 106, does not provide for damages to those whose estates are injured by sewage through changes in Mill Brook.

Prior to the action of the city council under this statute, Mill Brook, being the natural drainage outlet for the surface water of a large part of the city of Worcester, had become somewhat polluted by the surface wash from the streets, which had flowed

into it, and for many years a few common sewers had emptied into it; and the natural growth of population along and near its banks had caused its waters to become impure. It may be difficult to determine how great a change was produced by the action of the city in appropriating and constructing it as a common sewer, under the authority of the statute. But it may well be that the pollution of the water was materially increased, and that more or less injury was done to some of the property on the stream below. Such damages as the petitioner suffered by the action of the city prior to the filing of the petition may be recovered in this suit, but the contention that the same damages are to be assessed as if the brook had been entirely diverted from the land of the petitioner cannot be sustained. The city did nothing under these votes which could deprive the petitioner of the natural flow of the stream after it passed through the sewer which the city established and constructed, and the petitioner's enjoyment of the water in the condition in which it might come to its mill could not be interrupted without further proceedings by the city council, which would entitle it to additional damages. The appropriation under each vote was a change in the location of the brook, and a conversion of the brook into a sewer, whereby its waters would carry all the pollution which would come to them from other drains or sewers. The question for the jury at the trial was how much less were the waters of Mill Brook worth, for use in connection with the petitioner's land, by reason of being made to flow through a common sewer instead of flowing as they did just before the votes of the city council were passed. In passing upon the question of damages, the prospective change, if any, in the quality and condition of the water which would reasonably be expected to result from making the brook a common sewer, properly may be taken into account. *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363. *Davis* v. *New Bedford*, 133 Mass. 549. We are of opinion that the petitioner's second request for a ruling should have been granted.*

---

* This request was to the effect that the petitioner was entitled to recover damages at least to the extent of the pollution that had already resulted, as well as for such as might arise in the future, under the votes in question of the city council.

The right of every riparian proprietor on a stream to have the water come to him in its natural condition, except so far as it is affected by a reasonable use of their property by the owners above, is too familiar to require comment. *Merrifield* v. *Lombard,* 13 Allen, 16. *Merrifield* v. *Worcester,* 110 Mass. 216.

As to the construction of the statute which we have been considering, and of other similar statutes, see *Butler* v. *Worcester,* 112 Mass. 541. *Woodward* v. *Worcester,* 121 Mass. 245. *Bailey* v. *Woburn,* 126 Mass. 416. *Ætna Mills* v. *Waltham,* 126 Mass. 422. *Worcester Gas Light Co.* v. *County Commissioners,* 138 Mass. 289.                                              *Exceptions sustained.*