## MATHENY v. CITY OF AIKEN.

### HARRIGAL v. SAME.

1. CITIES — SEWERAGE — CONDEMNATION—NUISANCE —TORTS—INJUNC-
TIONS.—Under Code 1902, secs. 2008 and 2012, any private person whose property outside of city limits is damaged by reason of emptying sewerage pipes into a stream, thereby contaminating the waters, may have compensation awarded him. This statute is exclusive, and he cannot sue the city for tort and damages, nor to abate the nuisance. Could such owner, in absence of such statute, have nuisance abated, or maintain suit for damages?
2. NUISANCE.—The nuisance here complained of is private.

Before GAGE, J., Aiken, February, 1903. Affirmed.

Two actions: (1) John Matheny against City of Aiken, (2) J. G. Harrigal against same. From order sustaining demurrer, plaintiffs appeal.

Messrs. *Croft & Lamb,* for appellants, cite: *As to due process of law:* 12 N. Y., 209; 4 Wheat., 235; Cool. on

Con. Lim., secs. 256-7, 564; Williams on Mun. Liab. for Torts, 268, 269. *Has property of appellants been appropriated to a public use?* 13 Wall., 167; 10 Wall., 504; 1 L. R. A., 296; 26 L. R. A., 653; 38 L. R. A., 474; 28 L. R. A., 443; 15 L. R. A., 618; 138 U. S., 246; 133 U. S., 541; 48 L. R. A., 691, 711, 717; 10 Ency., 844, 846; 1 Wood on Nuisances, 582, 586; Williams on Mun. Liab. for Torts, 260-1; Cool. on Con. Lim., secs. 544, 557; 10 Wall., 504. *If so compensation must be made:* Cool. on Con. Lim., sec. 363; 11 L. R. A., 634; 48 L. R. A., 691. *Code, 1902, secs. 2012, 2187 to 2199 provide no remedy for appellants:* 59 S. C., 377; 38 S. C., 308; 42 S. C., 437; Dill. on Mun. Corp., 118; Cool. on Con. Lim., sec. 528; 1 Smith on Mun. Corp., secs. 701, 709; 74 N. Y., 183; 1 Wood on Nuisances, 586. *Constitutional question can be raised by pleading facts making it:* 10 Pet., 398; 12 Ency. P. & P., 1024; 4 L. R. A., 466; 60 S. C., 177; 21 S. C., 420; 63 S. C., 177. *Liability of Mun. Corp. at common law:* 2 Hill, 572; 2 Dill. Mun. Corp., secs. 947, 980, 981, 964, 965, 966, 971, 985; 44 S. C., 172; Code, 1902, 1047, 1048, 2010; 14 Gray, 541; 1 Smith on Mun. Corp., sec. 773; 11 Gray, 345; 19 Pick., 511; 102 Mass., 489; 30 Wis., 365; 67 Ind., 228; 112 Up. Can. Q. B., 343; 28 S. C., 373; Williams on Mun. Tort, 159, 160, 261; 56 Minn., 527; 101 N. Y., 136; 75 Ga., 110; 98 Mo., 523; Smith on Mun. Corp., sec. 815; 63 N. H., 136; 62 Ill., 519; 84 Ind., 325; 58 Kan., 344; 121 Mass., 245·; 35 Mich., 296; 18 N. Y. Ap. Div., 22; 22 N. Y. Ap. Div., 406; 52 Vt., 481; 66 Cal., 492; 49 N. W. R., 167; 74 Ill., 433; 33 Ind., 435; 108 Mass., 208; 156 Penn. St., 54; 9 R. I., 455; 67 Conn., 484; 52 Ga., 435; 75 Ga., 110; 145· Ill., 23; 154 Mass., 100; 110 N. Y., 273; 30 Wis., 365; 94 F. R., 561; 12 Wheat., 40; 48 L. R. A., 705; L. R., 5 ch., 583; 12 L. T., 667; 1 Wood on Nuis., 589, 590, 591; 12 Wheat., 40; 91 U. S., 540; 1 Black., 39; 118 U. S., 19; 2 Black., 590, 418; 4 Wall, 657; 18 Wall, 566. *City is liable to suit to protect property from continual injury and to abate nuisance:* 54 S. C., 198; 60 S. C., 2; 10 Wall., 505; 23 S. C., 522; Smith

on Mun. Corp., sec. 1097; 33 S. C., 1; 10 Ency., 846; 28
Ency., 968, 974; 1 L. R. A., 296; 38 L. R. A., 474; 4 L. R.
A., 572; High on Inj., secs. 501, 556; 7 L. R. A., 457, 459;
73 Mich., 522; 98 Mass., 39; 3 Am. R., 50; 10 Ency., 853;
1 Wood on Nuis., secs. 582, 586, 587; 40 A. R., 425; 14
A. R., 658; Dill. on Mun. Corp., 613, 922; Wood on Nuis.,
sec. 801; Smith on Mun. Corp., secs. 1630, 1095, 1096,
1097. *Complaint may be amended after demurrer sus-*
*tained:* 29 S. C., 325; 20 S. C., 460; 37 S. C., 382; 26 S.
C., 474; 18 S. C., 305; 9 S. C., 330; 61 S. C., 548; 101 U.
S., 567; 4 How., 131.

*Messrs. Hendersons,* contra, cite: *Authority to erect a*
*sewerage system implies authority to do all that is necessary*
*to its completion:* End. on Int. of Stat., sec. 418; 1 McC. L.,
546; 23 S. C., 517; 10 Ency., 2 ed., 237; 57 Am. R., 82; 102
Ind., 372; 24 Am. R., 601; 138 Ill., 285. *No suit lies for*
*mun. tort except authorized by statute:* 2 Hill, 511; 14 S. C.,
290; 19 S. C., 421; 44 S. C., 172; 58 S. C., 60; 20 S. C.,
116; 27 S. C., 419; 34 S. C., 144; 20 S. C., 218; 43 S. C.,
401; 58 S. C., 415; 53 S. C., 281; 2 Spear, 640. *As to*
*plaintiff's demand for injunction:* 65 S. C., 157; 44 S. C.,
172; 62 S. C., 56. *As to the right to condemn:* Code, 1902,
2008, 2012; 47 S. C., 474; Lew. on Em. Dom., sec. 240;
48 S. C., 553; 64 S. C., 129; 42 S. C., 36. *Complaint*
*alleges a public and not a private nuisance:* 54 S. C., 246;
1 Wood on Nuis., sec. 71; 21 Ency., 2 ed., 683; 1 Hill, 363;
30 S. C., 539; 46 S. C., 329; 64 S. C., 120; 7 L. R. A., 676;
24 Am. St. R., 715; 46 S. C., 335; 52 Am. St. R., 864.
*Amendment sought after complaint dismissed not allowed*
*where introduces a new claim:* 21 S. C., 226, 221; 31 S. C.,
204; 30 S. C., 575; 63 S. C., 311; 64 S. C., 491; 32 S. C.,
142.

March 7, 1904. The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE POPE. *Statement of Facts.*—The
following statement is taken from appellant's argument:

"The above entitled actions were begun by proper service of the summons and complaint in each action upon the defendant on the 17th day of September, 1901. By consent of counsel, both causes were heard together, upon demurrer in each case, before his Honor, Judge Gage, at the special term of the Court of Common Pleas for the county of Aiken, held at Aiken, the first Monday in January, 1903. Each action is for damages by a riparian proprietor against the city of Aiken for the pollution of a stream by city sewerage. Plaintiffs pray also for an injunction to abate the nuisance. The plaintiff, John Matheny, is the owner and occupant of certain premises, containing seventy-five acres, some three miles west of the city of Aiken and outside of its city limits. This tract of land, upon which the plaintiff resides, is watered by a stream known as Wise Creek, which, having its source near the city of Aiken, runs westwardly through the plaintiff's land and empties into Big Horse Creek, a short distance beyond Warrenville and about five miles from Aiken.

"For a number of years prior to the year 1899, the plaintiff, Matheny, was engaged in a dairy business, disposing of the product of his dairy farm in the adjoining towns of Warrenville and Graniteville, not far distant from his farm upon which he resided. The stream above described flowed through his farm, and of the tract lying along Wise Creek he had made a pasture for his cattle in order that he might avail himself of the water supply thereby afforded for his stock. His cattle drank the waters of Wise Creek and his business prospered, for, as the plaintiff alleges in his complaint, before his dairy business was destroyed by the construction of a sewerage system by the city of Aiken, 'said dairy business has in times past been very profitable to this plaintiff.'

"In 1893, the General Assembly of South Carolina authorized the city council of Aiken to order an election for the purpose of issuing bonds to provide for constructing a

system of water works and sewerage. The text of this act is as follows:

" 'An act to authorize the city council of Aiken to order an election for the purpose of issuing bonds for the purpose of putting in a system of water works and sewerage.

" 'Section 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by authority of the same, That the city council of Aiken is hereby authorized and empowered, upon the presentation to them of a petition, in writing, of a majority of the freehold voters of said city, to order an election, upon two weeks notice by advertisement in a newspaper published in said city of the time and place of said election, to determine the question whether or not said city shall issue bonds in an amount to be petitioned for, as aforesaid, by said freehold voters, not to exceed fifty thousand dollars.

" 'Sec. 2. That in the event of an election being called as above provided for, the question as to whether or not said bonds shall be issued shall be determined by a majority of the qualified voters who shall vote at said election.

" 'Sec. 3. That if a majority of the qualified voters at said election shall be in favor of issuing said bonds, then the city council of Aiken is hereby empowered and authorized to issue bonds to the amount so voted and in such denominations and to fall due at such times, not earlier than ten years from the date thereof, as may be determined by resolution of said council: *Provided,* Said bonds shall bear no greater rate of interest than six per cent. per annum.

" 'Sec. 4. That said city council of Aiken shall have full power to sell said bonds and to use the money arising therefrom for the exclusive purpose of erecting said water works or sewerage system, or both: *Provided,* Said bonds shall not be sold for less than their par or face value.

" 'Approved December 22d, A. D. 1893.'

"See Statutes at Large, vol. XXI., pp. 544-545.

"Thereafter, in 1899, the defendant, the city of Aiken,

constructed sewers for the purpose of collecting the sewerage in said city, and all of the sewerage was collected and carried in one large main pipe to a point about two miles west of the city of Aiken, where its contents are discharged into Wise Creek. The point at which the sewerage is emptied into Wise Creek is above plaintiff's farm, and the effect of discharging this sewerage into said stream is to render its water unfit for use, and to cover the banks and the bed of the same with a filthy and unwholesome sediment.

"The facts set forth in the complaint for the purpose of this demurrer are assumed to be true, and it appears therefrom that the discharge of the sewerage into the stream flowing through and past the plaintiff's farm contaminates, fouls and pollutes the waters of Wise Creek, and that the said stream emits nauseous and offensive odors where it flows through the plaintiff's land. The water of the creek is now unfit and unwholesome to drink, and it has poisoned several of the plaintiff's cattle, from which they died. The plaintiff's dairy business, once flourishing and prosperous, has been broken up and destroyed.

"The plaintiff prays damages in the sum of five thousand dollars, and asks that the defendant, the city of Aiken, be enjoined from discharging the contents of its sewers into Wise Creek, so that he may use the waters of said stream in its original purity as accustomed by nature.

"With few exceptions the complaint of J. G. Harrigal sets out substantially a similar cause of action. Harrigal is the owner of a tract of land, containing about twelve acres, bounded on the east by lands of John Matheny. Wise Creek also runs through the land of Harrigal. The residence of Harrigal is only a few yards distant from the stream. The offensive odors from the putrid waters flowing past his home have rendered it unhealthy as a place of residence, destroyed the purity of the atmosphere about his home, and greatly depreciated the value of his property. He has been compelled to erect fences to prevent his stock from drinking the poisonous waters of the stream. The

plaintiff, Harrigal, also alleges that the defendant committed the acts complained of wilfully and recklessly, for before the sewers were laid, he informed the mayor of the city of Aiken that to empty the city sewerage into this stream would create a nuisance and tend greatly to depreciate the value of his property, and he protested against this being done. The plaintiff, Harrigal, prays for damages in the sum of three thousand dollars, and asks for relief by injunction to abate the nuisance.

"Both complaints contain allegations that the acts of the city of Aiken, in destroying plaintiff's property rights in the waters of Wise Creek as riparian owners, are in violation of article I., section 5, of the Constitution of South Carolina, and that the plaintiffs are deprived of their property without due process of law; further, that the acts of the defendant are in violation of article V. of the amendments to the Constitution of the United States, in that plaintiffs are deprived of their property without due process of law, and that the acts of the defendant constitute a taking of their property for the public use without just compensation, and are contrary to the law of the land.

"The defendant demurs to each action upon two grounds:

"1. That in the absence of a statute authorizing such action, a municipal corporation cannot be sued in an action of tort.

"2. That the nuisance complained of is a public and not a private nuisance, and that plaintiffs have not sustained such special injuries as would entitle them to maintain a private action for damages.

"The demurrers came on to be heard before his Honor, Judge Gage, and as a result of said hearing he sustained the first ground of demurrer, but overruled the second. Thereafter, on the 16th day of February, 1903, the plaintiffs appeared before his Honor, Judge Gary, then sitting as Circuit Judge for the county of Aiken, and made a motion, after notice to defendant's counsel, to amend both complaints, by alleging further, that defendant's acts were in

violation of article I., section 17, of the Constitution of South Carolina; also of article I., section 23, of the Constitution of South Carolina of 1868; and also in violation of article XIV., section 1, of the amendments to the Constitution of the United States; and by alleging further, that the plaintiffs are citizens and residents of the State of South Carolina and of the United States of America.

"Judge Gary refused to allow these amendments, upon the ground that he had no jurisdiction. From the decree of his Honor, Judge Gage, and from the order of his Honor, Judge Gary, plaintiffs then appealel upon the list of exceptions beginning at folio 60 of the brief, which exceptions are as follows:

"1. Because it is respectfully submitted that the acts of defendant in fouling the stream mentioned in the complaint and in depriving the plaintiffs of the use of the same, and in destroying the plaintiff's, Matheny's, property therein mentioned, violates their rights as secured to them under amendment 5 of the Constitution of the United States, which provides that no person shall be deprived of property without due process of law, and that private property shall not be taken for private use without just compensation, and that his Honor, the Circuit Judge, erred in not so deciding.

"2. Because it is respectfully submitted that the acts of defendant in fouling the stream and depriving plaintiffs of the use of the same, and in destroying the plaintiff's, Matheny's, property, as stated in the complaint, is in violation of the plaintiffs' rights as secured to them by section 1 of the 14th amendment to the Constitution of the United States, which provides that no State shall deprive any person of his property without due process of law, and that his Honor, the Circuit Judge, erred in not so deciding.

"3. Because it is respectfully submitted that the acts of the defendant in fouling the stream and in depriving plaintiffs of the use of the same, and in destroying the plaintiff's, Matheny's, property, as mentioned in the complaint, is in violation of the plaintiffs' rights as secured to them under

section 5, of article I., of the Constitution of the State of South Carolina, which provides that no person shall be deprived of his property without due process of law; and that his Honor, the Circuit Judge, erred in not so deciding.

"4. It is respectfully submitted that the acts of the defendant in fouling the stream mentioned in the complaint, and in depriving plaintiffs of the use of the same, and in destroying the property of the plaintiff, Matheny, as mentioned in the complaint, is in violation of plaintiffs' rights as secured to them by section 17, of article I., of the Constitution of the State of South Carolina, which declares that private property shall not be taken for the public use without just compensation being first made therefor.

"5. Because his Honor, the Circuit Judge, has erred in deciding that, under the common law, a municipal corporation, like the State, was exempt from suit unless the right to sue had been expressly given by statute; whereas, he should have decided that under the common law a municipal corporation was liable for any wrong done by it which deprived a person of his property without compensation.

"6. It is respectfully submitted that his Honor, the Circuit Judge, erred in holding that the act of 1893, which authorized the city of Aiken to issue bonds for the exclusive purpose of erecting a sewerage system, gave the city the right to empty its sewerage into the stream which flows through plaintiffs' land, for it appears by the complaint that the place where such sewerage is emptied is two miles west of the city of Aiken, and no authority is given in said act to empty the city sewerage outside the corporate limits; and hence, by a proper construction of such act, the city would have only had the right to empty the sewerage within the corporate limits of the city of Aiken; and his Honor, the Circuit Judge, therefore, erred in deciding that the city had authority under said act to discharge the sewerage beyond its limits.

"7. Beause his Honor, the Circuit Judge, erred in deciding that the act of 1896, Townsend's Code, section 2012, allows

condemnation proceedings and compensation to the person whose property has been taken for the purpose of construction a sewerage system; for it is submitted that condemnation proceedings are not allowed for sewerage purposes, but only for the purpose of water works and electric lights.

"8. Because his Honor erred in holding that the plaintiffs might have obtained compensation for damages sustained by them by a special proceeding, it being submitted that there is no statute in this State providing for special proceedings for compensation for property taken for the use of a sewerage system by a municipal corporation. And it is submitted that his Honor further erred in holding that the plaintiffs did not rely upon section 17, article I., of the State Constitution; for while it is true such section and article were not expressly pleaded in the complaint, yet they were specially referred to in the argument of plaintiffs' counsel, and they relied upon them to sustain the rights of the plaintiffs.

"9. It is submitted that even if an action for damages cannot under the law of this State be sustained against a municipal corporation for destroying a person's property, that action may, nevertheless, be maintained against such municipal corporation to protect the property from continuous injury by such municipal corporation, and especially to enjoin such corporation from continuing and perpetuating a nuisance.

"10. Because his Honor erred in sustaining the first ground set forth in the demurrer of the defendant, for it is submitted that the complaint does state facts sufficient to constitute a cause of action.

"11. The plaintiffs further except to the rulings of his Honor, Judge Gary, in refusing to allow the plaintiffs to amend their complaints in the particulars set forth in the notice containing the proposed amendments, and which are as follows: 'By adding at the end of line 6 of the 4th paragraph of the amended complaint herein the following: "And also in violation of article I., section 17, of the Constitution

of South Carolina, which provides that private property shall not be taken for the public use without just compensation being first made therefor; and also in violation of article I., section 23, of the Constitution of South Carolina of 1868, which provides that private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner or a just compensation be made therefor." Also by adding at the end of the line 9, of the 5th paragraph of said amended complaint, the following, to wit: "And is also in violation of article XIV., section 1, of the amendment of the Constitution of the United States, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." And by adding at the end of the 5th paragraph of the said amended complaint the following, which shall stand as the 6th allegation of said complaint: "6. The plaintiff further alleges that at the times mentioned in the complaint, he was and is now a citizen and resident of the State of South Carolina, and also a citizen and resident of the United States of America." ' That it is respectfully submitted that his Honor, Judge Gary, had the power and authority to allow such amendments, and he erred in not so deciding; but should this exception be overruled, the plaintiffs now ask leave of the Supreme Court in the furtherance of justice to allow the complaints to be amended as prayed for and as above stated."

This case, involving as it does the suability, so to speak, of municipal corporations for torts alleged to have been committed by them, is one of moment, and possibly it is better to have the language of the Circuit Judge before us. The text of that decision is as follows:

"The same issues of law are made in these two cases, so that by consent of counsel they were tried together at one and the same hearing. The issues arise upon the demurrer

to the complaint, and the demurrer makes two issues, to wit: it appears on the face of the complaint:

"1. That the action is for tort, for the misfeasance of a municipal corporation resulting in the fouling of the waters of a running stream, when there is no statute making a corporation liable therefor.

"2. That the action is for damages as aforesaid for a public nuisance, and not a nuisance private, special or particular to the plaintiffs, when by law defendant is not liable to plaintiffs for a public nuisance.

"It is settled by a line of decisions of the Supreme Court of this State, that ordinarily a municipal corporation is not liable to an action for tort except by permission of the legislature. *White* v. *Charleston,* 2 Hill, 571; *Coleman* v. *Chester,* 14 S. C., 291; *Parks* v. *Greenville,* 44 S. C., 172. That is not denied by the plaintiff.

"But the complaint charges that the acts of the defendant are in violation of the Constitution of the United States, at amendment 5, where it is provided: 1. 'That no person shall be deprived of property without due process of law.' And 2. 'That private property shall not be taken for public use without just compensation.' And it further alleges that the acts of the defendant are in violation of the Constitution of this State, at article I., section 5, where it is provided, that 'no person shall be deprived * * * of property without due process of law.' The fifth amendment of the Federal Constitution is a limitation on the powers of the Federal government, and not the powers of the State government. *Pumpelly* v. *Green Bay Co.,* 13 Wall., 177; *Thorington* v. *Montgomery,* 147 U. S., 492. It has, therefore, no relevancy to the issues of this cause, and its consideration may be dismissed without further comment.

"There is a provision of the Federal Constitution which declares that 'no State shall deprive any person of * * * property without due process of law' (14 amendment, section 1), but the plaintiff has not invoked that provision by plea or argument. There is also a provision of the State

Constitution which declares private property shall not be taken for public use without just compensation being first made therefor. Article I., section 17. The plaintiff has not pleaded violation of that law.

"The only inquiry left, then, is to consider if the things charged against the defendant in the complaint disclose a denial to the defendant of the protection of the law of the land, or, as it is sometimes called, due process of law (article I., section 5, Constitution '95). The complaint does not refer to the warrant of the defendant to do the things charged against it. The allegations are simply that the defendant, a municipal corporation, constructed in 1899 a sewerage system for the purpose of carrying sewerage from the water closets in said city, which sewerage empties into Wise's Creek, a stream of water running through the plaintiff's seventy-five acres of land and at a point above plaintiff's land, and 'that said sewerage emits very offensive and nauseous odors, and the same contaminates, fouls and pollutes the water of said creek * * * where the same runs through plaintiff's farm. And also causes offensive odors and smells on said plaintiff's farm, and has destroyed the use of the same as a dairy farm, and has fouled and so polluted the water of said creek as to render the same nauseous and unfit for his cattle to drink from, and has already poisoned several of his cows by drinking said polluted waters, and thereby caused them to die. And has also by polluting and fouling said water, caused plaintiff's dairy business to be broken up and destroyed, to the damage of the plaintiff $5,000.' The plaintiff prays also for a permanent injunction to arrest the wrong. There is no allegation that the defendant's construction or operation of the sewer has been negligent. The plaintiff's property is entitled to the protection of the common and statute law of force when the first Constitution was enacted. That common and statute law is what the Constitution of 1790 and 1865 denominated the law of the land, and what the Constitution of 1895 entitles due process of law. *State* v. *Simmons,* 2 Spear, 644. If the defendant

was a private corporation, or a natural person, the common and statute law would declare it was liable for a wilful hurt to plaintiff's property. But by the same common law, because by nothing else, a municipal corporation was exempted from such liability, for it was esteemed a part of the State, and like the State exempted from suit, except by consent of the State, expressed in a statute. *White* v. *Charleston,* 2 Hill, 571. The case is not altered, if a warrant for defendant's action be disclosed and considered. As hereinbefore stated, the pleadings do not disclose that warrant. It was, however, fully adverted to by both sides in the argument. The General Assembly, in December, 1893, authorized the city of Aiken to issue bonds for the exclusive purpose 'of erecting a sewerage system.' 21 Statute, 544. The sewer in question was constructed pursuant to that authority. As was said in the argument, the power to construct the sewer implies of necessity the power to discharge its contents somewhere. If a municipality is not liable for its action independent of a statute, it is certainly not liable if its action be warranted by a statute.

"As before stated, the complaint does not rely on that clause of the Constitution of this State, which declares that private property shall not be taken for public purposes without just compensation being first made therefor.

"Although the argument of plaintiff's counsel was full and strong to the effect that the plaintiff had a property right in the stream, and that permanently fouling its waters was a taking of property, yet the demand for compensation for the breach of the right was by the plea and argument referred to the Federal Constitution. I have been strongly tempted, however, to consider the plaintiff's case under the provisions of the State Constitution, but reflection has satisfied me I had better not make a case which was not made by learned counsel.

"It yet remains to consider, if the defendant, though not triable for tort, is liable to be enjoined from the continuance of a nuisance, for the complaint is one for a permanent

injunction as well as for damages. The limit to which our Court has gone is to hold that a municipal corporation is not liable to be mulcted in damages for tort except a statute allow it. It has not held, so far as I have ascertained, that if a municipal corporation creates a nuisance, the court of equity could not enjoin its further continuance. If a municipal corporation is not so liable, it is because such corporations are not amenable to judicial control, wherever their action is independent of a contract relation and the outcome of misfeasance only. The reason assigned why a city is not liable to an action for damages for misfeasance is that the city corporation 'is a mere government agency established for public purposes.' (*Young* v. *Charleston,* 20 S. C., 118.) The State cannot be sued in its Courts on contract or tort, because it is not a corporate entity, but a sovereignty. A city is not a sovereignty, it is a corporate entity, and may be sued on its contracts, and it may, too, be restrained from other illegal actions. *Wilkins* v. *Gaffney,* 54 S. C., 198; *Vesta Mills* v. *Charleston,* 60 S. C., 2; *Yates* v. *Milwaukee,* 10 Wall., 505. If the allegations of the complaint be true, and they are assumed to be on demurrer, the defendant has created a nuisance damaging to the plaintiff's property.

"Again, the owner of land along the banks of a running stream has a property right in the flowing water, and the fouling by a city sewer of the waters so as to permanently damage the land owner, is the taking of property by the city from the citizen without compensation. *Pumpelly* v. *Green Bay Co.,* 13 Wall., 167; Cooley on Constitutional Limitations, 544; *Yates* v. *Wilwaukee,* 10 Wall., 504. But if this be so, would injunction be finally allowable in a case like that at bar? The sewer was constructed in 1899 by authority of the State granted in 1893. It is for a public purpose, for it carries off the fecal matter of a city of 4,000 people. The city had, therefore, the legal right to foul the stream, and if in doing that, private property was destroyed, the owner thereof has a right to compensation at the hands of

the city. The act of 1896 recognizes that right of the citizen, and points him to a remedy. Townsend's Code, sec. 2012. The subject matter of that act is water works, sewerage and lights. (Section 2008.) The remedy prescribed by the statute is the same provided for the condemnation of lands by railroad corporations, and generally it is exclusive of every other remedy. *Tompkins* v. *R. R. Co.*, 37 S. C., 382. Certainly the remedy is not injunction. It is either the special proceeding prescribed by the statute or an action in this Court for compensation. This action is not a special proceeding, nor can the complaint herein be sustained as one for compensation under article I., section 17, of the State Constitution. First, because that article and section are not relied on. And second, because there are no allegations that the defendant has denied the plaintiff's right to compensation, or that plaintiff never consented to entry by the corporation. *Glover* v. *Remly*, 63 S. C., 56.

"Having reached the conclusion, the action does not lie. The second ground of demurrer is irrelevant; but the issue has been made and 'I shall consider it. The complaint does not state facts from which a public nuisance is inferable. In that particular, it differs from the complaint in the case of *Baltzegar* v. *R. R. Co.*, 54 S. C., 348, cited by the defendant. If the defendant was a manufacturer and fouled the waters of the stream with drugs, the riparian owner would have an action for damages done to him. 'If a person brings or accumulates on his land anything which if it should escape may cause damage to his neighbor, he does so at his peril,' quoted in *Frost* v. *Berkeley Co.*, 42 S. C., 411. See, also, *Threatt* v. *Mining Co.*, 49 S. C., 128; Spelling on Injunction, section 313. The case is not altered because the defendant fouled the waters by means of a sewer pipe. I am, therefore, of the opinion that the first ground of demurrer must be sustained, and the second ground of demurrer must be overruled. It is so ordered, and the complaint dismissed."

There can be no question that the plaintiffs respectively have had their property rights invaded by the defendant. It

may be conceded that the sewer as authorized by the legislature of this State to be constructed by the city of Aiken, was a necessity to the preservation of the health of its citizens, and yet such city had no right to despoil these citizens, the plaintiffs, of their property without compensation. The General Assembly, if it do so by the act of 1893, has no power in itself to disregard the plain mandates of the Constitution of this State, when it authorized the city of Aiken to take the property of these plaintiffs for its sewer. The very object of the Constitution is to protect the individual owner of property from the spoliation of his property at the hands of any person or persons or power without compensation for its injury or destruction. To say the contrary is to advocate an absurdity. I would be inclined to hold that the acts of the defendant, the city of Aiken, touching the emptying its sewerage into Wise Creek, to the destruction, or very great injury, of the property right of these plaintiffs without compensation therefor, was such an invasion of such property rights as immediately gave the plaintiffs a right to action, *if it were not for some matter which will hereinafter be specifically set forth.* It must be remembered that the complaint alleges that the city of Aiken has emptied its sewerage into Wise Creek two miles beyond its corporate limits, and that this stream runs through the property of these plaintiffs, and also that there are no allegations in the complaint which justify this action of the city council of Aiken. Certainly the act of the legislature, passed in the year 1893, gives the city no such authority, directly or indirectly. There is no allegation in the complaint that the city has had septic tanks for the attempted purification of the matter which passes through the pipe before it is dumped into Wise's Creek. These would be matters of defense. But now we are confined to the demurrer to the complaints and to the allegations of fact in the complaints. It seems to me that it is there made to appear that the defendant, the city of Aiken, for the purposes of these two actions, admits that it has caused its sewerage to

be conducted for two miles beyond its city limits and caused the same to be emptied into Wise's Creek at that distance from its city limits, without any effort on its part to purify the contents of its pipe before they are emptied into the said creek.

It has been held in several cases that in some instances cities may be held liable to actions for tort by individuals. As is said in *Hill* v. *City of Boston,* 122 Mass., 344: "If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river or a natural water-course, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort, to the same extent that any corporation or individual would be liable for doing similar acts. *Anthony* v. *Adams,* 1 Meto., 284, 285; *Lawrence* v. *Fairhaven,* 5 Gray, 110; *Perry* v. *Worcester,* 6 *Id.,* 544; *Parker* v. *Lowell,* 11 *Id.,* 358; *Wheeler* v. *Worcester,* 10 Allen, 591." Also, in the same case, "So if a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another to his injury, it is liable to him in an action of tort. *Proprietors of Locks and Canals* v. *Lowell,* 7 Gray, 223; *Hildreth* v. *Lowell,* 11 *Id.,* 345; *Haskell* v. *New Bedford,* 108 Mass., 208. But in such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act, causing a direct injury to the property of another, outside of the limits of the public work." In *Merrifield* v. *City of Worcester,* 110 Mass., 216; s. c., 14 American Reports, 592, which was an action of tort by the plaintiff against the city of Worcester, where the complaint alleged that the (plaintiff) was seized of land lying on each side of Mill Brook, and that he owned a machine shop on said brook, fitted up with a large steam engine and boilers, for the purpose of furnishing steam power to the tenants of said machine shop; that he had the right to have the water of the brook flow pure and uncorrupted—such water in a pure condition being absolutely essential to

the carrying on of his works; "that the defendant wrongfully and unjustly cast, carried and deposited into said Mill Brook and the waters thereof, at points in the channel thereof above and higher than the works of the plaintiff, great quantities of filth * * * and discharged from sewers, privies and water closets * * * by which the water became greatly corrupted and unfit for use in the plaintiff's business, &c." The judgment of the Appellate Court was to reverse the judgment of the Court below and send down for trial this question: "Whether the damage which plaintiff had suffered was attributable in any degree to the improper construction or unreasonable use of the sewers, or to the negligence or other faults of the defendant in the management of them, is a question which does not seem to have been tried. If it should be found to be so attributable, the action may be maintained * * *." In the course of the opinion of the Court, in the case just cited, these words will be found: "To enable a riparian owner to maintain an action for damages, he must show not only that defendant has done some act which tends to injure the stream, and which he has no legal right to do, or which is in excess of his legal right so as to be an unreasonable use thereof, but also that the detriment of which the plaintiff complains is the result of that cause. When he can show an appreciable detriment to himself and connect it with such wrong by another, he may recover the damages shown to be due to that wrong. *Merrifield* v. *Lombard,* 13 Allen, 16." The comparatively recent case of *Barnes* v. *District of Columbia,* 1 Otto, 540 (decided in 1875), which was sustained in the case of *Maxwell* v. *District of Columbia,* 1 Otto, 557, also *Dant* v. *District of Columbia,* 1 Otto, 557. It is true, these cases were decided by a bare majority of the Court, yet they have never been overruled. In *Barnes* v. *District of Columbia, supra,* it was held, that a city or village holding a voluntary charter, is responsible for its mere negligence in the care and management of its streets. While these cases have been criticized in *Hill* v. *City of Boston, supra,* and in our case of *Young* v.

*City of Charleston,* 20 S. C., 116, yet such is still the rule in
the United States Supreme Court.   We would remark just
here, that *White* v. *City Council of Charleston,* 2 Hill, 571,
was the case where the city council of Charleston ordered
the private dwelling house of a citizen to be blown up by
powder to check the spread of a fire in that city.   The case
of *Black* v. *City Council of Columbia,* 19 S. C., 412, was
where the water works in the city of Columbia failed to
furnish water with which to extinguish a fire which de-
stroyed plaintiff's residence, notwithstanding he paid for
such water supply.   The case of *Coleman* v. *Chester,* 14 S.
C., 291, was where the private property of plaintiff was
taken by the city council of Chester, to wit: a piece of plain-
tiff's land to widen a street in that city.   The case of *Young*
v. *City Council of Charleston, supra,* was where the plaintiff
was injured by reason of a defective culvert on the street of
that city.   None of these cases fall under the class of cases
cited herein from our South Carolina Reports, but all of our
South Carolina cases fall under the class where there were
valid laws vesting the city council with full power to do
the acts complained of.   As before remarked, the act of
1893 only gave the power to the city of Aiken to ordain a
water works and sewerage system, without coupling the
additional power to go beyond the city limits to lay piping
for sewerage, yet the act of 1896, as amended by the act of
1897, set forth as section 2008, of volume 1, of Code of
Laws of South Carolina, has corrected this, and fully em-
powered cities in this State to construct sewerage; and
section 2012 has authorized cities to lay pipes and to con-
demn any property or rights of way to enable it to lay pipes,
on payment to.the owner thereof just compensation for such
property or rights of way to be condemned, such condemna-
tion to be determined in the manner provided by law for the
condemnation of lands and rights of way by railroad corpo-
rations.   Thus it will be seen that the mode of acquiring any
property or rights of way has been fixed by our statutes,
which includes the duty of compensation to riparian owners

of property along a stream. This being so, the method pre-scribed for such purposes is exclusive of any suit therefor for damages. The complaint does not set up a refusal by the defendant to comply with this law. The Circuit Judge was not in error in holding and adopting the views herein an-nounced.

It is not necessary to consider defendant's ground of appeal. It may be remarked, however, that we fail to see any error in that part of the Circuit decree which refuses to hold that the action of the defendant was a public and not a private wrong. The mere reading of the complaint shows that it was a private wrong.

It is the judgment of this Court, that the judgment of the Circuit Court be, and is hereby, affirmed.

MR. JUSTICE JONES *concurs in the result.*

MR. JUSTICE WOODS. I concur in the view that plaintiffs had an adequate and exclusive remedy under section 2012 of the Civil Code, and in affirming the judgment of the Circuit Court on that as a sufficient ground. I am unable, however, to assent to the view indicated by the Chief Justice, that, but for that statute, these actions could be maintained as actions for damages for tort against the city of Aiken. That a municipal corporation cannot be held liable for damages in such an action, has been often decided in this State. *White* v. *The City Council of Charleston,* 2 Hill, 571; *Coleman* v. *Chester,* 14 S. C., 286; *Black* v. *City of Columbia,* 19 S. C., 412; *Young* v. *The City Council of Charleston,* 20 S. C., 116; *Chick* v. *Newberry County,* 27 S. C., 419; *Hill* v. *Laurens County,* 34 S. C., 141; *Parks* v. *Greenville,* 44 S. C., 168; *Bramlett* v. *City of Laurens,* 58 S. C., 60.

As the Chief Justice has shown, these decisions are not in accord with the weight of authority elsewhere, and they could hardly be sustained on principle. For these reasons, I agree that the doctrine they maintain should not be ex-tended. They do not go to the extent of holding that a

municipal corporation may not be restrained from committing a nuisance, or wrongfully taking or damaging private property, or that property may not be recovered back when unlawfully taken by such corporation. Hence it seems to me that the opinion of the Circuit Judge is correct, that but for the exclusive remedy provided by section 2012, under the allegations of the complaint, the plaintiffs would have been entitled to an order of injunction, but not to a verdict for damages.

MR. JUSTICE GARY *did not sit in this case.* R.