## WILLIAM T. MERRIFIELD *vs.* CITY OF WORCESTER.

If the water of a stream becomes polluted by the emptying into it of city sewers, so that a riparian proprietor cannot use it in his business as he has been before accustomed to do, he cannot recover against the city for the pollution, so far as it is attributable to the plan of sewerage adopted by the city; but he can recover for it so far as it is attributable to the improper construction or unreasonable use of the sewers, or to the negligence or other fault of the city in the care or management of them.

TORT. Writ dated April 5, 1871. The declaration alleged that the plaintiff was seised and possessed of a lot of land on both sides of Mill Brook, so called, in Worcester, with a machine shop thereon, fitted up with a large steam-engine and boilers for the purpose of furnishing steam-power to the tenants of his said machine shop; that he had a right to have the water of the brook flow pure and uncorrupted, such water in a pure condition being absolutely essential to the carrying on of his works; that the defendants, on April 5, 1861, and on divers days and times since, "wrongfully and unjustly cast, carried and deposited, and caused to be cast, carried and deposited into said Mill Brook and the waters thereof, at points in the channel thereof above and higher than the works of the plaintiff, great quantities of filth, dirt, gravel, refuse material, matter discharged from sewers, privies, water-closets, stables, sinks and streets, and divers other noxious materials and ingredients," by reason of which the water became greatly corrupted and unfit for use in the plaintiff's business, "said water so corrupted, among other things, corroding the plaintiff's boilers and engine and fixtures, causing an adhesion of sediment and other materials to said boilers, and greatly increasing the expense of making the necessary amount of steam for said works, and greatly increasing the danger of explosion in said boilers, and causing thereby frequent breakages in the engine, fixtures and works, and deterioration thereof, and causing great expense in the repair thereof and in the interruption to the running of the works, thereby causing great injury to all of the plaintiff's establishment;" and that "the waters of the brook so corrupted are thereby rendered so offensive that it is difficult and expensive to procure competent engineers and workmen to operate said works."

At the trial in this court, the case, which is stated in the opinion, was reserved by *Chapman*, C. J., for the determination of the full court. If the court should be of opinion that the plaintiff was entitled to recover upon the case reserved, or any part thereof, the case to be sent to assessors to assess the damages sustained by the plaintiff, if any, upon such rules and instructions as the court should give ; otherwise, judgment to be rendered for the defendants.

*P. E. Aldrich*, for the plaintiff, cited *Merrifield* v. *Lombard*, 13 Allen, 16 ; *Wesson* v. *Washburn Iron Co.* Ib. 95 ; *Wheeler* v. *Worcester*, 10 Allen, 591 ; *Goldsmid* v. *Tunbridge Wells Improvement Commissioners*, L. R. 1 Ch. 349 ; *Attorney General* v. *Metropolitan Board of Works*, 1 Hem. & Mil. 298 ; *Attorney General* v. *Council of Borough of Birmingham*, 4 K. & J. 528 ; *Oldaker* v. *Hunt*, 6 De G., M. & G. 376 ; *Attorney General* v. *Leeds Co.* L. R. 5 Ch. 583 ; *Spokes* v. *Banbury Board of Health*, L. R. 1 Eq. 42 ; *Lingwood* v. *Stowmarket Co.* Ib. 77 ; *Wood* v. *Sutcliffe*, 2 Sim. (N. S.) 163 ; Angell on Watercourses (6th ed.) § 136 ; Kerr on Injunctions, 382.

*G. F. Hoar & T. L. Nelson*, for the defendants, cited *Boston & Roxbury Mill Co.* v. *Newman*, 12 Pick. 467 ; *Hildreth* v. *Lowell*, 11 Gray, 345 ; *Wellington, petitioner*, 16 Pick. 89, 97 ; *Flagg* v. *Worcester*, 13 Gray, 601 ; Callis on Sewers, 80 ; Woolrych on Sewers, 1 ; Jacob, Law Dict. Tit. Sewer.

WELLS, J. The plaintiff sues for an alleged violation of his rights as a riparian proprietor upon a small natural stream running through the city of Worcester, near its centre. The injury complained of is that of polluting its water, so as to render it unfit for mechanical and other uses, to which he has been accustomed to apply it. He alleges generally that the defendant, in 1861, and on divers days and times since, has cast, and caused to be cast, carried and deposited into said brook, above the plaintiff's works, " great quantities of filth, dirt, gravel, refuse material, matters discharged from sewers, privies, water-closets, stables, sinks and streets, and divers other noxious materials and ingredients." The declaration does not set out the particular grounds upon which it is proposed to hold the municipal corporation re-

sponsible for these torts. The city would not be liable to an ac-
tion for such direct acts of wrong, whether done by individual
citizens or by its own officers, without proof of some special au-
thority to do the acts, unless they resulted from or were connected
with the exercise of some proprietary right by the city. *Oliver* v.
*Worcester*, 102 Mass. 489, 497. From the report, we infer that
the ground of liability is that the dirt, filth and other materials
were carried into the stream by means of certain drains or sewers
constructed under authority therefor conferred upon the city coun-
cil by the charter, Sts. 1848, *c.* 32, § 14 ; 1866, *c.* 199, § 30 ;
and by the general laws. St. 1841, *c.* 115. Gen. Sts. *c.* 48, § 3.

The St. of 1867, *c.* 106, authorized the taking of Mill Brook
and the entire diversion of its waters from the channel by which
it passes the plaintiff's works. So far as he has suffered damage
from any proper exercise of the power and rights conferred by
that act, he must seek his remedy by a different proceeding from
this, under the special provisions of the act itself. But the stream
had not been so diverted at the time when this action was brought,
and it does not appear that the injuries complained of were the
result of any proceedings under that act. The allegations also
cover a long period prior to its adoption.

It appears that in 1850, more than twenty years before the
date of the writ in this case, a drain or sewer was constructed, by
order of the city council, discharging from Thomas Street into
Mill Brook, a short distance above the works of the plaintiff.
This drain extended back to, and ran a short distance along Main
Street. In 1857 and at various times subsequently this drain has
been extended farther along Main Street ; and drains running
along several other streets have been connected with it. The
plaintiff contends that the injurious effects of the drainage into
the brook have thus been constantly increasing, down to the time
of action brought. This question, so far as material, it is agreed
shall be submitted to assessors, if in any aspect of the case the
plaintiff is entitled to have his damages assessed. The case
then, presents the question, upon what grounds, and to what ex
tent, a city is responsible in damages for such effects produced by
its system of drainage, or by the manner in which its drains are
used and managed.

The right, of which the plaintiff alleges a violation, is not that of acquired property in possession. It is not an absolute right, but a natural one, qualified and limited, like all natural rights, by the existence of like rights in others. It is incident merely to his ownership of land through which the stream has its course. As such owner he has the right to enjoy the continued flow of the stream, to use its force, and to make limited and temporary appropriation of its waters. These rights are held in common with all others having lands bordering upon the same stream; but his enjoyment must necessarily be according to his opportunity, prior to those below him, subsequent to those above. It follows that all such rights are liable to be modified and abridged in the enjoyment, by the exercise by others of their own rights; and, so far as they are thus abridged, the loss is *damnum absque injuria.* The only limit that can be set to this abridgment through the exercise by others of their natural rights, is in the standard or measure of reasonable use. *Gould* v. *Boston Duck Co.* 13 Gray, 442. *Haskins* v. *Haskins,* 9 Gray, 390. *Tourtellot* v. *Phelps,* 4 Gray, 370, 376. *Thurber* v. *Martin,* 2 Gray, 394. *Pitts* v. *Lancaster Mills,* 13 Met. 156. *Wadsworth* v. *Tillotson,* 15 Conn. 366. *Springfield* v. *Harris,* 4 Allen, 494.

So the natural right of the plaintiff to have the water descend to him in its pure state, fit to be used for the various purposes to which he may have occasion to apply it, must yield to the equal right in those who happen to be above him. Their use of the stream for mill purposes, for irrigation, watering cattle, and the manifold purposes for which they may lawfully use it, will tend to render the water more or less impure. Cultivating and fertilizing the lands bordering on the stream, and in which are its sources, their occupation by farm-houses and other erections, will unavoidably cause impurities to be carried into the stream. As the lands are subdivided and their occupation and use become multifarious, these causes will be rendered more operative, and their effects more perceptible. The water may thus be rendered unfit for many uses for which it had before been suitable; but so far as that condition results only from reasonable use of the stream in accordance with the common right, the lower riparian proprietor has no remedy.

When the population becomes dense, and towns or villages gather along its banks, the stream naturally and necessarily suffers still greater deterioration. Roads and streets crossing it, or running by its side, with their gutters and sluices discharging into it their surface water collected from over large spaces, and carrying with it in suspension the loose and light material that is thus swept off, are abundant sources of impurity, against which the law affords no redress by action. *Flagg* v. *Worcester*, 13 Gray, 601. *Barry* v. *Lowell*, 8 Allen, 127. *Turner* v. *Dartmouth*, 13 Allen, 291.

Upon the case stated in the pleadings and report, we must assume that the plaintiff is able to show an appreciable detriment to his rights in the stream. That detriment consists in its unfitness for certain uses in his works upon the stream; whereby he is deprived of a capacity, incident to the ownership of his land, to make such use of its waters as they pass; or his right so to use them is impaired in value. At most it is but the deprivation of that natural advantage, already impaired by other causes against which he has no redress. There is no allegation of damage to his property otherwise than by this deprivation; no allegation that a nuisance is created which injuriously affects his land or the occupation thereof.

It may readily be supposed that a small stream like Mill Brook, with a considerable city like Worcester upon either bank, and the adjacent lands descending rapidly towards its bed, would cease to preserve its waters from impurity, and become valueless for any purpose except that of drainage and the creation of power by its head and fall. All this may result even though no unjustifiable act be done to effect it. To enable a riparian owner to maintain an action for damages, he must show not only that the defendant has done some act which tends to injure the stream and which he has no legal right to do, or which is in excess of his legal right so as to be an unreasonable use thereof, but also that the detriment of which the plaintiff complains is the result of that cause. Where he can show an appreciable detriment to himself, and connect it with such wrong by another, he may recover the damages shown to be due to that wrong. *Merrifield* v. *Lombard*. 13 Allen. 16

It was decided in *Child* v. *Boston*, 4 Allen, 41, that in the laying out of common sewers, that is, "in determining what drains should be built and where they should discharge," the duties of the aldermen (or mayor and aldermen) were of a *quasi* judicial nature ; that "they were required to act, not as agents of the city, or in any manner under the direction of the city, but as public officers."

For the incidental disadvantage, loss or inconvenience necessarily resulting to individuals, in their rights of property, from such action ; or from the execution of the work, in a proper and skilful manner, as so laid out ; or from the maintenance and use of the drains in a proper and reasonable manner, without negligence in their care and management, no action of tort can be maintained against the city. This exemption of municipal bodies and their officers from liability, and corresponding subordination of individual rights and interests to the safety, health and welfare of the general public, is a principle of frequent application. *Baker* v. *Boston*, 12 Pick. 184. *Taylor* v. *Plymouth*, 8 Met. 462. *Commonwealth* v. *Tewksbury*, 11 Met. 55. *Commonwealth* v. *Alger*, 7 Cush. 53, 85. *Belcher* v. *Farrar*, 8 Allen, 325.

But in the construction of works so laid out, the town or city is responsible that it be done in a proper manner, and with a reasonable degree of skill and care ; and if, for want thereof, any unnecessary injury is caused to the property or rights of individuals, the town or city may be charged therewith in an action of tort. *Perry* v. *Worcester*, 6 Gray, 544. *Sprague* v. *Worcester*, 13 Gray, 193. *Emery* v. *Lowell*, 104 Mass. 13.

According to the rule laid down in *Child* v. *Boston*, the city is also responsible for the proper care and management and reasonable use of drains established in accordance with the general provisions of the statutes, and liable in damages for injuries suffered by reason of negligence or other fault of the city, or its officers and agents having the charge thereof.

Whether the damage which the plaintiff has suffered is attributable in any degree to the improper construction or unreasonable use of the sewers, or to the negligence or other fault of the defendant in the care and management of them, is a question which

does not appear by the report to have been tried. If it should be found to be so attributable, the action may be maintained; and this question must be first determined by the assessors provided for by the report, who are "to assess the damages sustained by the plaintiff, if any," upon the rules and principles herein set forth. *Assessors to be appointed.*