## WASHBURN & MOEN MANUFACTURING COMPANY vs. CITY OF WORCESTER.

Worcester. Oct. 2, 1874. — Jan. 4, 1875. COLT & MORTON, JJ., absent.

A bill in equity against a city to abate a nuisance alleged the conversion by the city, under authority of the Legislature, of the channel of a natural stream into a sewer, and the opening into it of other sewers and drains into which all the sewage of the city was received; that it flowed thereby into another natural stream and was discharged upon the plaintiff's land, thereby creating a nuisance and causing special damage to property of the plaintiff. *Held*, upon demurrer, that, in the absence of any allegation of negligence on the part of the city, either in the mode of discharging the sewage, or in omitting to take proper precautions to purify it, the bill could not be maintained.

BILL IN EQUITY to abate a nuisance, alleging the following facts :

1. The ownership by the plaintiff, a manufacturing corporation, of a tract of land in the southerly part of Worcester, in the village of Quinsigamond, lying on both sides of Blackstone River, having thereon a rolling mill, and tenement houses used by the workmen in the mill, and a dam across said river, and a pond of water for supplying water power for working said mill.

2. That the river is a natural stream of water, and the plaintiff is entitled to have the same flow through its estate pure and uncorrupted, and that it used the water thereof for the purpose of generating steam for the use of the mill.

3. That on April 16, 1867, the voters of the city of Worcester accepted the St. of 1867, *c.* 106, entitled, " An act concerning sewers and drains in the city of Worcester."

4. That Mill Brook, mentioned in said act, is a natural stream of water flowing through the populous parts of the city, and empties into Blackstone River a short distance above the premises of the plaintiff.

The bill then set forth various orders of the city council whereby the channel of Mill Brook had in some places been changed, and it had been laid out and appropriated as a main sewer, connected with and emptying into which were about thirty-one miles of sewers.   The bill then proceeded as follows:

" From the sewers and drains entering Mill Brook channel as aforesaid, great quantities of sewage matter and filth, both solid and liquid, are discharged and carried into the water of said brook in the new channel, and the same, flowing through said new channel, are discharged and carried into said river, and are thence deposited upon the plaintiff's said premises.

" By means of this filthy and deleterious matter, the water of said river flowing through the plaintiff's premises is fouled and corrupted, and the plaintiff's mill-pond filled up, and the most noisome, offensive and unwholesome smells, vapors and gases are emitted and discharged upon said premises.

" Thereby the plaintiff's said premises are rendered filthy, unwholesome and inconvenient, and the plaintiff and those occupying the premises are greatly annoyed and incommoded, and the water of said river is rendered unfit for the plaintiff's purposes, and the plaintiff is otherwise injured, and its said estate diminished in value.

" All which acts and doings of the defendant and its officers and agents are unauthorized by law and in violation of the rights of the plaintiff, and constitute a nuisance both private and public, from which the plaintiff derives special damage as aforesaid, and the defendant intends to continue and maintain the same."

The prayer of the bill was that the city be required to abate said nuisance, and discontinue said wrongful acts, and for further relief.

The defendant demurred for want of equity ; and the case was heard by *Gray*, C. J., and reserved for the consideration of the full court.

*G. F. Hoar & T. L. Nelson*, for the plaintiff.  1. The plaintiff concedes that the city is not liable for such injuries to the stream below, caused by the construction of public works like sewers and streets, as would result to the riparian owner from the reasonable use of the stream above him by the inhabitants of a populous city, nor liable as a wrongdoer for any consequences of the execution with due care and skill of the lawful orders of the city council for the construction and maintenance of such works.  The ground of the complaint is not the injury to the purity of the stream ; but the injury to the atmosphere and the land, by discharging upon the plaintiff's estate, by artificial means, the sewage of a large city, to an extent which creates both a public and private nuisance.   The demurrer confesses that by means of the defendant's structure · " great quantities of sewage matter and filth, both solid and liquid, are deposited upon the plaintiff's premises ; " that " thereby the plaintiff's mill-pond is filled up, the most noisome, offensive and unwholesome smells, vapors and gases are emitted and discharged upon said premises," the same " thereby rendered filthy, unwholesome and inconvenient, and that this constitutes a public nuisance."  Such acts are not within the right of the upper owner to a reasonable use of the stream. The upper riparian owner cannot do to the land of the lower what he could not do to his own.  It is not within the power of the city council to authorize them.  *Haskell* v. *New Bedford*, 108 Mass. 208.   *Child* v. *Boston*, 4 Allen, 41.   *Merrifield* v. *Worcester*, 110 Mass. 216.   *Wheeler* v. *Worcester*, 10 Allen, 591.   *Emery* v. *Lowell*, 104 Mass. 13.   *Richardson* v. *Boston*, 19 How. 263. *Perry* v. *Worcester*, 6 Gray, 544.

2. The power to deposit upon the lands of private individuals the sewage of a city is not conferred by the St. of 1867, and has never been conferred by any sewer act within this Commonwealth. If the defendant can maintain this power, it can authorize the construction of a drain terminating in the cellar of an individual, or on a hillside above his dwelling.

*B. F. Thomas & W. A. Williams*, for the defendant.

GRAY, C. J.   Where a city, or a board of municipal officers, is authorized by the Legislature to lay out and construct common sewers and drains, and provision is made by statute for the assessment, under special proceedings, of damages to parties whose

estates are thereby injured, the city is not liable to an action at law or bill in equity for injuries which are the necessary result of the exercise of the powers conferred by the Legislature. But if by an excess of the powers granted, or negligence in the mode of carrying out the system legally adopted, or in omitting to take due precautions to guard against consequences of its operation, a nuisance is created, the city may be liable to indictment in behalf of the public, or to suit by individuals suffering special damage. *Haskell* v. *New Bedford*, 108 Mass. 208. *Merrifield* v. *Worcester*, 110 Mass. 216. *Brayton* v. *Fall River*, 113 Mass.

The case at bar, as now presented, does not require the court to define the limits of the application of either of these rules to the discharge of the Mill Brook sewer into the Blackstone River. The only acts charged against the city of Worcester in the bill before us are the converting of the channel of Mill Brook into a sewer, and the opening of other sewers and drains into the same. These acts were expressly authorized by the St. of 1867, c. 106. *Butler* v. *Worcester*, 112 Mass. . The only further allegations in the bill consist of a conclusion of fact, that a nuisance to the plaintiff was thereby created ; and a conclusion of law, that the acts of the city were unauthorized and in violation of the plaintiff's rights. The bill does not allege any negligence of the city, either in the manner in which the sewage was discharged from the mouth of the sewer, or in omitting to take proper precautions to purify it. The necessary result is that the

*Demurrer must be sustained.*