## WILLIAM HARRINGTON *vs.* CITY OF WORCESTER.

Worcester.    October 5, 1904. — November 21, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Worcester.    Municipal Corporations.*

Before the enactment of St. 1886, c. 331, it was not the duty of the city of Worcester to establish an independent system of sewage purification, which would require the taking of lands and the expenditure of large sums of money, necessary to purify the sewage discharged into the Blackstone River through Mill Brook under authority of St. 1867, c. 106, and, therefore, in an action against that city for injury to the plaintiff's land and mill pond, the fact that sewage in the water of Blackstone River caused the plaintiff's damage, coupled with the fact that the city made no attempt to purify its sewage before discharging it into the river, is not evidence of negligence on the part of the city before the enactment of St. 1886, c. 331.

St. 1886, c. 331, establishing a system of sewage disposal for the city of Worcester, imposes a public duty on that city in the interest of the general public, looking particularly to the protection of the health of the people living near the Blackstone River, and does not give that city privileges for its own benefit as did St. 1867, c. 106. Therefore the city is not liable to one whose land and mill pond are injured by a negligent failure of the city properly to perform the duty imposed upon it by the first named statute.

KNOWLTON, C. J.　This case is before us on a demurrer to the plaintiff's declaration, charging the defendant with carelessly and negligently constructing its sewers and drains, and carelessly and negligently and improperly failing to purify the waters discharging through the sewers and drains, before discharging them on the plaintiff's premises, so that the water flowing through the plaintiff's mill pond has become corrupted, impure and filthy, and sewage has been placed upon the plaintiff's premises and in his mill pond, and other damages have been caused to him and to his property.　Under an order of the Superior Court, upon the defendant's motion, specifications were filed setting forth particularly the matters relied on, and the defendant filed a second demurrer to the declaration and specifications.　At the hearing upon the declaration, specifications and demurrers, it was agreed by the plaintiff, as appears by the report of the presiding judge, that the declaration and specifications be modified by allegations as follows : " That when chapter 331, Laws of 1886, was enacted, it was necessary for the city of Worcester to adopt a system of sewage purification independent of the construction of its sewers, and to take tracts of land therefor, in order to prevent the pollution of the Blackstone River arising from the appropriation and use of Mill Brook as a sewer, in the manner authorized by chapter 106, Laws of 1867 ; that there has been no negligence on the part of the city in the actual construction or management of its sewers and no negligence on the part of the city unless negligence be inferable from the fact that prior to 1886 the city made no attempt to purify its sewage before discharging it into the Blackstone River through said Mill Brook ; and that since 1886, it has failed to adopt a system of purification adequate in size and proper in design to accomplish the purification of its sewage, although such system might have been adopted and constructed, but would have involved the expenditure of larger sums of money and taking larger tracts of land.　In 1886 and thereafter, the city of Worcester, acting under chapter 331, Laws of 1886, established purification works which necessitated its taking large tracts of land and making large expenditures of money, and has expended for land and constructions, over \$1,500,000, and annually, sums varying from \$14,000 to \$53,000 for maintenance.　Except as modified

hereby, all allegations of the declaration and specifications stand." The judge overruled the demurrers, the defendant appealed, and the judge reported to this court the questions of law raised by the appeal with a stipulation that if the demurrer should be sustained judgment should be entered for the defendant. This agreement does not appear of record, except in the report, and we infer that it was made orally at the hearing, and treated as a modification of the plaintiff's pleadings. It would have been more regular to have put the agreement in writing, and to have filed it as an amendment of the declaration or specifications; but it has been embodied in the written report of the judge which is a part of the record, and adopted in that form by the parties. We therefore will treat it as an amendment of the declaration.

The effect of the declaration and specifications, so modified, is, as we interpret them, to present an averment that the plaintiff suffered damage in his property from the pollution of the stream, and the discharge of sewage through it upon his land, but that, prior to the action of the city under the St. 1886, c. 331, there has been no negligence on the part of the city, either in the construction or management of its sewers or otherwise, unless negligence is inferable from the fact that, prior to 1886, the city made no attempt to purify its sewage before discharging it into the Blackstone River through Mill Brook.

The first question is whether negligence is inferable from the fact that sewage in the water caused the plaintiff damage, coupled with the fact that the city made no attempt to purify its sewage before discharging it into the river.

The law applicable to the use of Mill Brook by the city of Worcester, under the statutes, has often been considered by this court. *Merrifield* v. *Worcester,* 110 Mass. 216. *Butler* v. *Worcester,* 112 Mass. 541. *Washburn & Moen Manuf. Co.* v. *Worcester,* 116 Mass. 458. *Workman* v. *Worcester,* 118 Mass. 168. *Woodward* v. *Worcester,* 121 Mass. 245. *Morse* v. *Worcester,* 139 Mass. 389. *Washburn & Moen Manuf. Co.* v. *Worcester,* 153 Mass. 494. The St. 1867, c. 106, authorized the city of Worcester to take and use Mill Brook for the purpose of receiving sewage and discharging it into the river below, and the case last cited holds that some contamination of the water in the river must have been

contemplated by the Legislature as necessarily incidental to this use, and that damages for such contamination could be recovered by riparian proprietors under the statute. On the other hand, in *Morse* v. *Worcester*, 139 Mass. 389, it was decided that the city was bound to use due care in the construction and management of its sewers, so as not to cause any unnecessarily injurious consequences to others, and that, " if it is practicable to use any methods of constructing the sewer, and, as a part of the construction, of purifying the sewage at its mouth, at an expense which is reasonable, . . . it is the duty of the city to adopt such methods." But the court went on to say that it was not the duty, nor within the power, of the city to establish an independent system of sewage purification which would require the taking of lands and the expenditure of large sums of money for the construction and operation of such a system. Such a system was authorized and required by the St. 1886, c. 331, and it is agreed that, for the proper purification of the sewage, such a system was necessary. For the failure to establish such a system prior to the enactment of the statute, the city is not liable. Following the law as it is stated in the two cases last cited, the mere fact that the water at the plaintiff's pond was somewhat polluted, is not proof of negligence on the part of the defendant; for the existence of some pollution there, as necessarily incident to the use of the brook in the manner authorized, was contemplated by the Legislature. For the damage caused by such necessary pollution, the plaintiff was entitled to recover, and presumably did recover damages under the original statute. If, as a part of its system of sewerage, the city could purify the sewage by any reasonable incidental construction and by careful management, without the establishment of an independent plant for purification, involving the taking of land and the exercise of other powers not given by the statute, it was its duty to do it. The precise question is whether it can be inferred from the facts before the court that there could be such purification which would have materially diminished the plaintiff's damages. We do not see how such an inference can be drawn from the facts averred, as limited by the agreement. It is possible that some effectual means of purification could have been provided in connection with and as a part of the construction and main-

tenance of the sewer; but we think it quite as probable that it could not have been done without the exercise of powers which the city then did not possess. There is nothing stronger than conjecture, if there is even that, in favor of the proposition to be proved. We are therefore of opinion that, under the agreement, there was no actionable negligence on the part of the city, before the enactment of the St. 1886, c. 331.

It is averred that, under this statute, the city has failed to adopt a system of purification adequate in size and proper in design to accomplish the purification. The question on this part of the case is whether such negligence is actionable. This depends upon the construction of the statute. If this is an act putting upon the city of Worcester, as an agency of the government, the performance of a governmental duty for the benefit of the general public in the neighborhood of the Blackstone River, there is no liability in damages for the failure properly to perform the duty. This principle of law is established in this Commonwealth by many decisions, and it is recognized quite generally elsewhere. *Hill* v. *Boston*, 122 Mass. 344, and cases cited. *Bigelow* v. *Randolph*, 14 Gray, 541. *Benton* v. *Boston City Hospital*, 140 Mass. 13. *Tindley* v. *Salem*, 137 Mass. 171. *Pettingell* v. *Chelsea*, 161 Mass. 368. *Eastman* v. *Meredith*, 36 N. H. 284. *Maxmilian* v. *Mayor of New York*, 62 N. Y. 160. If, on the other hand, this should be treated as merely an enabling act to authorize the city of Worcester to perform duties beyond those which it was authorized to perform under the St. of 1867, c. 106, in order the better to protect individual owners upon the stream in the enjoyment of their original rights of property which had not been taken away under the earlier statute, the city is liable for this negligence, as it was liable under the chapter just mentioned for negligence in the construction and management of the sewer in Mill Brook. The considerations in favor of each of these different views of the law are of nearly equal weight; but, on the whole, we think it a better interpretation of the language of the Legislature to hold that this is a measure in the interest of the general public, looking particularly to the protection of the health of the people living near the Blackstone River, and that the duty to make this provision was imposed as other public duties which rest upon cities and towns

are imposed, like the duty to provide for the education of children, or the duty to establish and maintain the ordinary institutions of the government. It does not purport to give the city privileges which it asks for its own benefit, but it is mandatory. It requires the removal of the sewage, not so completely as to make the water pure for all kinds of manufacturing purposes, but only to such a degree that it shall not " create a nuisance or endanger the public health." It does not direct that this shall be done at once, but only that it shall be done within four years after the passage of the act. There is a special provision for the enforcement of the statute by injunction or other equitable process, and this does not seem to be for the benefit of riparian proprietors or other property owners as .such, but for the benefit of the general public. Action of this kind can *be taken only on complaint of the selectmen of a town. on the Blackstone River.

The last section specially recognizes in another way the fact that this is a public matter, in which the city of Worcester acts, in part at least, as an agency of the government ; for there is a provision that the Commonwealth may, if it deems it equitable so to do, distribute a part or the whole of the expenses of this service among all the cities and towns of the State. Primarily and chiefly, it seems to be a measure in the interest of the public health, and these provisions, enacted with a knowledge of the rule of law that for the non-performance of public duties there is no liability in an action for negligence, indicate a purpose to leave the city without liability to individual property owners under this statute. It follows that this action cannot be maintained, and that the public must look for the protection of their interests to proceedings in equity instituted on the complaint of a board of selectmen.

*Judgment for the defendant.*

*A. P. Rugg,* (*J. F. Humes* with him,) for the defendant.

*T. H. Gage, Jr.,* for the plaintiff.