WILLIAM J. ANGLIM, trustee, *vs.* CITY OF BROCKTON.

Plymouth. December 7, 1931. — January 7, 1932.

Present: RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Water Rights. Municipal Corporations,* Officers and agents, Liability in tort, Sewer, Drain. *Agency,* What constitutes, Independent contractor. *Nuisance. Public Officer. Negligence,* In construction of sewer. *Equity Jurisdiction,* To enjoin pollution of stream by municipality. *Brockton. Equity Pleading and Practice,* Master: findings, rulings of law.

Upon the filing of the report of a master to whom was referred a suit in equity under a rule in the usual form, it is the duty of the court to decide on the facts found what, if any, relief should be granted, and rulings of law by the master respecting the ultimate rights of the parties cannot affect the decision of the court.

Where a statute authorizing a city to establish a system of drainage took effect upon its enactment, it was not error to find, on testimony by a superintendent of streets and an engineer, that work done on the system in many years thereafter was done "under the . . . statute."

It cannot be presumed that public officers constructing a system of drainage in a city, which was authorized by a statute, acted illegally.

St. 1888, c. 309, authorizing the city of Brockton to establish a system of drainage for rainfall, surface and subsoil water only, and to alter streams within the city for that purpose, provided that a person suffering damage by acts of the city or its agents in the exercise of the powers conferred thereby might have his damages assessed in the same manner as in the laying out of highways; and that the discharge of filth, refuse or other polluting substance into streams was not authorized. In a suit in equity commenced against the city in 1922 by the owner of land and pondage areas on a stream below the city, to compel the defendant to use the stream so as not to injure the plaintiff's property and for damages, a master, without a report of the evidence, found that work in widening, straightening and deepening the stream under the authority of the statute was done in a workmanlike manner between 1919 and 1922 by an independent contractor hired by the board of highway commissioners of the city established under St. 1912, c. 340, the work being done under the supervision and subject to the acceptance of the city engineer; that such gravel and other material as came upon the plaintiff's land as a result of the work done under St. 1888, c. 309, came there as a result of an extraordinary freshet; that, apart from such work, the stream received the natural drainage of the city; that, although noxious sewage and other polluting matter from the city's sewerage

system was carried into the stream at times and slight amounts of it
reached the plaintiff's land, this was due to freshets and to accidents
to the sewerage system and not to negligence on the defendant's part,
that the plaintiff, who became owner of the land about 1918, knew
of the pollution; that his premises would have been unsuitable for
harvesting ice at a profit even if the stream had been unpolluted; and
that the plaintiff had suffered no damage.  The bill was dismissed.
*Held*, that

(1) The circumstance, that the work under St. 1888, c. 309, was done
under the supervision and subject to acceptance by the city engineer,
did not make the contractor and his employees agents of the city nor
create a liability on its part for their negligent acts;

(2) The highway commissioners of the city were public officers for
whose negligent acts in the performance of their public duties the
city would not be liable, apart from statute creating such liability;

(3) In so far as the gravel and other material came on the land of
the plaintiff as a result of the work done under St. 1888, c. 309, the
plaintiff's exclusive remedy was under that statute, and he could not
maintain the suit for relief in that respect even though there may
have been jurisdiction in equity as to some other aspects of the con-
troversy;

(4) The plaintiff had no right to relief in equity against the city
with respect to such pollution of the water of the stream as was caused
by surface drainage from the city streets flowing into it;

(5) Although the city had no right, in connection with its sewerage
system, to create a nuisance on the plaintiff's land, and although the
plaintiff's right to relief respecting such a nuisance was not barred by
the findings that his land was unsuitable for the harvesting of ice and
that he knew of the pollution when he became the owner of the land,
nevertheless, the bill properly was dismissed: the city was not liable
if the presence of sewage and other polluting matter in the stream was
due to a defect in the plan for the sewerage system, and if it were due
to matters pertaining to the construction, use or maintenance of the
sewerage system, the master's finding, that the city was not negligent,
was conclusive against the plaintiff.

A finding by the master in the suit in equity above described, that the
plaintiff had made conveyance of his property in 1925, reserving
"the present chose in action," was not inappropriate, since it might at
least have affected the nature of the relief if it had appeared that the
plaintiff was entitled to some relief.

BILL IN EQUITY, filed in the Superior Court on April 1,
1922, and described in the opinion.

The suit was referred to a master.  Material facts found
by the master and the plaintiff's exceptions to his report
are described in the opinion.  A motion by the plaintiff to
recommit the report was denied by *Collins*, J., who ordered
the entry of an interlocutory decree sustaining certain of the

plaintiff's exceptions, overruling the others and confirming the report. Such a decree was entered thereafter by order of *Macleod*, J., by whose order there also was entered a final decree dismissing the bill. The plaintiff appealed from both decrees.

*T. A. Flanagan*, (*G. W. Folsom* with him,) for the plaintiff.

*J. E. Handrahan*, for the defendant.

SANDERSON, J. This bill in equity was brought to restrain the defendant from discharging into or depositing in a stream flowing through the defendant city above the plaintiff's property any refuse material, sewage, gravel and other debris, to compel it so to use the water of the stream as not to injure the plaintiff in his occupation and enjoyment of his property, for the assessment of damages and other relief. The case was referred to a master. The plaintiff has appealed from an interlocutory decree denying his motion to recommit the master's report, overruling some of his exceptions thereto, sustaining others and confirming the report. The plaintiff has also appealed from a final decree dismissing the bill. The evidence is not reported.

When the bill was filed, in 1922, the plaintiff had for about four years held title as trustee to real estate and flowage rights in the city of Brockton and the town of East Bridgewater. A nonnavigable stream which had its source above the city of Brockton flowed through this real estate. Within the limits of the plaintiff's land were pondage areas, but for many years no dams had been in use to flood these areas and except in times of freshet the water had flowed through the plaintiff's land only in the channel of the stream. The property which the plaintiff alleges to have been damaged is more than three miles from the city of Brockton. In 1925 the plaintiff disposed of all the real estate to which the suit relates, reserving what the report describes as "the present chose in action." The bill alleges that since January 1, 1920, the defendant through its servants and agents has deposited gravel, sand and silt in the stream above the plaintiff's land which have been carried by the current and deposited on the plaintiff's land, and threatens to con-

tinue to do the same. It also alleges that continuously and in violation of the plaintiff's common law rights and of his rights under the provisions of St. 1888, c. 309, § 9, the defendant has discharged into the stream domestic and manufacturing filth, refuse and other polluting substances by means of a system of sewerage and surface drainage, impairing and destroying the purity of the water, and that the plaintiff's rights will be irreparably violated and infringed if the defendant is permitted to continue to do the acts of which he complains, his water privileges will be destroyed and rendered of no value, and he will be prevented from utilizing his flowage rights for the lucrative purpose of harvesting and selling ice and for other lucrative uses.

St. 1888, c. 309, is entitled "An Act to authorize the city of Brockton to provide for surface drainage, and to improve the brooks and natural streams within the limits of said city." Section 1 of the act provides: "The city council of the city of Brockton may adopt a system of drainage for . . . [the] whole or, from time to time, for different parts of its territory, and may provide by ordinance that assessments for making the same shall be made upon estates within such territory by a fixed uniform rate." Section 2 provides that the board of mayor and aldermen of the city, "for the purpose of surface drainage, may, within the limits of said city, alter, change, widen, straighten and deepen the channels of any brooks or natural streams . . . and the more effectually to make said improvements may take and hold by purchase or otherwise . . . real estate within the limits of said city, as said board of mayor and aldermen may adjudge necessary for the purposes of this act." Section 6 gives any person whose land or rights are taken or who suffers damage or injury in his property or rights from any act of the city or its agents in the execution of the powers conferred by the act the right to have the amount of his damages, making due allowance for the improvement of raising grade, "ascertained and recovered as in the laying out of highways." Section 9 of the act defines drainage as used in the act as referring to rainfall, surface and subsoil water only, and provides that nothing in the act shall

be construed as authorizing the discharge of any domestic or manufacturing filth or refuse or other polluting substances into any of the brooks or natural streams within the city of Brockton either directly or through any drain that may be constructed under the provisions of Pub. Sts. c. 50 or as a part of the system of drainage authorized by this act. It also provides for the approval of the system of drainage by the State board of health before it is constructed and "In case of the violation of any of the provisions of this act, or the creation of a nuisance, appeal may be had to the state board of health, who may order the abatement of any nuisance, if in their judgment there is cause therefor. Any court having jurisdiction in equity may, upon the application of said board, by any process or decree, enforce the decision of said board in the premises." The master states that the alleged violation of this section is the basis of the plaintiff's bill in equity.

St. 1914, c. 258, authorizes the city of Brockton to extend its surface drainage system.

The evidence not being reported, we cannot disturb the findings of fact unless inconsistent with each other, and general findings must be held to import a finding of all subsidiary findings essential to the conclusion. It is the duty of the court to decide on the facts found what, if any, relief should be granted. *Clark* v. *Seagraves*, 186 Mass. 430. The rule to the master did not require him to make rulings of law, and his rulings to which objection has been made cannot affect the decision of the court. *Adams* v. *Young*, 200 Mass. 588. *New England Foundation Co.* v. *Reed*, 209 Mass. 556. *Bradley* v. *Borden*, 223 Mass. 575, 586.

The plaintiff excepted to the finding that considerable work had been done under the statute for many years before the plaintiff became the owner of the property in question, on the ground that there was no evidence before the master that the proper preliminary steps were taken to bring the work "under the . . . statute." The statutes in question by their terms took effect upon their passage. It does not appear how the rights of the plaintiff could be affected by this finding, even if wrong or not called for by the pleadings, but

we see no error in basing such a finding, as the master stated that he did, upon testimony of the superintendent of streets for ten years prior to 1905, and of an engineer employed by the city from 1894 to 1913, introduced without objection. Furthermore it is not to be presumed that public officers in constructing a system of drainage, which was authorized by statute, were acting illegally. The master in a later part of his report found upon evidence not reported that all the work shown by the evidence to have been done in the nature of widening, straightening and deepening the stream, beginning in July, 1919, and ending in September, 1922, was done under authority conferred by the two statutes to which reference has been made and was done by an independent contractor employed by the highway commissioners of Brockton, who are public officers. He also found that all of this work was done in a workmanlike manner. The series of contracts entered into between the city acting through its highway commissioners and a contractor required the latter to do his work in accordance with specifications and plans made by the city engineer and approved by the highway commissioners, and the city engineer was made referee as to quality and fitness of the operations and as to any questions .that might arise, and the work was in fact done under his supervision and subject to his acceptance. The requirement that the work be subject to such supervision and acceptance did not make the contractor and his employees agents of the city or create a liability on the part of the defendant for their negligent acts. *Hooe* v. *Boston & Northern Street Railway,* 187 Mass. 67. *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91. The mere fact that a superintendent of the principal contractor visits work from time to time to see that it conforms to specifications does not make the subcontractor less an independent contractor nor render the principal contractor liable for the negligent performance of work by the subcontractor. *Carey* v. *Baxter,* 201 Mass. 522. In the same case at page 526, the court said: "This work was done by . . . an independent contractor who was the proprietor of the business that he was conducting, and he alone was responsible for care in doing it."

St. 1912, c. 340, provides for the establishment of a board of highway commissioners in Brockton and prescribes their duties. Inasmuch as highway commissioners of the city are referred to as making the contracts to carry out the purposes of the statutes to which reference has been made, it must be assumed that the commissioners derive their authority from this statute which provides for such a board. By virtue of the provisions of this statute these commissioners are public officers for whose negligent acts in the performance of their public duties the city would not be liable, apart from statute creating such liability. *Smith* v. *Gloucester,* 201 Mass. 329. See *Hathaway* v. *Everett,* 205 Mass. 246; *Donohue* v. *Newburyport,* 211 Mass. 561.

A town is not liable if a superintendent of streets, who has the powers of a surveyor of highways, diverts water from public streets, without vote of the town, even if the result is that a natural water course overflows upon land of a private owner and injures his property, because in doing such an act to make the streets safe and convenient for travel he was performing his duty as a public officer and not acting as agent, officer or employee of the town. *Blaisdell* v. *Stoneham,* 229 Mass. 563, 565.

The finding that the plaintiff had made conveyance of the property in 1925 was an appropriate one to make. It might at least affect the nature of the relief if it should appear that the plaintiff was entitled to some relief.

In so far as the gravel, sand and silt or other material came on the land of the plaintiff, if they did so come as a result of the work done under the statutes, the exclusive remedy to recover damages therefor is that specified in the statute, and a bill in equity brought by a landowner is not the remedy therein provided. *Lancy* v. *Boston,* 185 Mass. 219, 221. *Harrington* v. *Worcester,* 186 Mass. 594. See *Washburn & Moen Manuf. Co.* v. *Worcester,* 116 Mass. 458, 461; *Holleran* v. *Boston,* 176 Mass. 75; *International Paper Co.* v. *Commonwealth,* 232 Mass. 7, 10; *Hester* v. *Brockton,* 251 Mass. 41, 42. The master found in substance that such material as may have been carried to the plain-

tiff's land as a result of the widening, straightening and deepening of the stream was so carried as the result of a freshet of such unusual character that none like it had been known for about forty years. The rule, sometimes applied, that a court of equity which has obtained jurisdiction because a ground of equitable relief has been alleged will retain the bill to determine other controversies between the parties relating to the same matter even though such other controversies in and of themselves would not be ground for proceeding in equity, does not extend so far as to permit a plaintiff to have relief in equity where his only right under statutes such as those now under consideration is to seek his relief in another way. Upon the facts found the plaintiff has failed to establish any right to equitable relief based upon acts done by the defendant pursuant to the statutes authorizing the defendant to provide for surface drainage and to improve the brooks and streams within its limits.

In addition to the other claims made by the plaintiff he contends that his common law right as an owner of land upon a nonnavigable stream has been so invaded by the acts of the defendant in connection with its sewerage system, independently of what the highway commissioners undertook to accomplish under the statutes to which reference has been made, that he is entitled to equitable relief. The findings that there was no marked change in the natural flow of water and that its quantity has not been increased are conclusive in favor of the defendant so far as the plaintiff's right to the natural flow of the stream is concerned.

Upon the findings the defendant would not be liable because the water flowing through the plaintiff's land was unfit for harvesting ice. The stream received the natural drainage of the streets of the city, most of the watershed of the city flows into it, and manufacturing plants drain their waste into it, and these conditions the master believed the plaintiff knew when he bought the property. So far as the claim of pollution of the stream to the injury of the plaintiff is concerned, he must rely upon the findings to the effect that by action of the defendant either alone or with others the water of the stream flowing to and by the

plaintiff's property was polluted prior to and at the time of bringing suit; that within city limits there have been discharges of sewage into the stream, at times in large quantities and of a very noxious character; that the discharge of this sewage has been at the pumping station of the city sewerage system and from one of the drains of the drainage system; that these discharges of sewage occurred from causes for which, in the opinion of the master, the city should not be held liable in damages. The master states as his reasons for this opinion (1) the freshet conditions, when water has overflowed the banks of the stream and mixed with sewage in such quantities that it has overflowed at the pumping station into the river and thus sewage has got into the stream; (2) streets have changed from dirt or gravel to macadam and more water drains into the stream as the natural wash of city streets; (3) at all times of excessive high water there have been discharges of sewage into the river from the overflow from the pumping station, especially in 1921 when the unusual freshet occurred; (4) in 1918 sewage entered the river when new pumps were being installed and adjusted; (5) there was evidence that for three years before 1927 there had been no discharge of sewage into the stream; (6) in 1922 a break occurred in the sewer pipe near the river and it was three days before repairs were completed and at this time sewage went into the river; this break was in a main drain carrying surface drainage from gas works and manufacturing plants along the river; (7) chemical analysis of the water taken at different times showed the amount of pollution to be small and at few places; (8) there was but little testimony that any sewage reached the plaintiff's property three miles below, and the few times when sewage appeared there the result was due to conditions caused by accidents to the system and by freshets, for which the defendant was not liable; and (9) there was no negligence on the part of the defendant.

The fact that the work of straightening, widening and deepening the stream was done under authority of statute and in a proper and workmanlike manner would not bar

the plaintiff from contending that his rights had been thereby infringed, and the master has so found and ruled at the request of the plaintiff.

The plaintiff relies upon G. L. c. 83, § 6, which authorizes towns to acquire land for the treatment, purification and disposal of sewage, and provides: "Towns or persons owning or operating filter beds or other works for the treatment, purification and disposal of sewage shall provide and maintain works adequate for the treatment of the sewage at all times, and shall operate such works in such manner as will prevent a nuisance therefrom or the discharge or escape of unpurified or imperfectly purified sewage or effluent into any stream, pond or other water, or other objectionable result." The right given a city by the Legislature to lay out common sewers does not include the right to create a nuisance upon land of an individual. *Proprietors of Locks & Canals* v. *Lowell,* 7 Gray, 223. *Haskell* v. *New Bedford,* 108 Mass. 208, 215. *Diamond* v. *North Attleborough,* 219 Mass. 587, 590.

In *Washburn & Moen Manuf. Co.* v. *Worcester,* 116 Mass. 458, 461, the court, speaking through Chief Justice Gray said: "But if by an excess of the powers granted, or negligence in the mode of carrying out the system legally adopted, or in omitting to take due precautions to guard against consequences of its operation, a nuisance is created, the city may be liable to indictment in behalf of the public, or to suit by individuals suffering special damage." In *Morse* v. *Worcester,* 139 Mass. 389, 391, it was said: ". . . it is not to be assumed that . . . [the Legislature] intends to authorize the city or town . . . so to use the stream, as to create a nuisance, unless this is the necessary result of the powers granted."

A municipality is not liable for damages because of any defect or inadequacy in its plan for a system of sewerage. *Merrifield* v. *Worcester,* 110 Mass. 216. *Manning* v. *Springfield,* 184 Mass. 245. *Diamond* v. *North Attleborough,* 219 Mass. 587, 590. *Pevear* v. *Lynn,* 249 Mass. 486. Its liability for damage caused by improper construction, unreasonable use of sewers or fault in their care and man-

agement, ordinarily is based on negligence. *Merrifield* v. *Worcester*, 110 Mass. 216. *Stock* v. *Boston*, 149 Mass. 410. *Norton* v. *New Bedford*, 166 Mass. 48. *Manning* v. *Springfield*, 184 Mass. 245. *Haley* v. *Boston*, 191 Mass. 291, 293. *Pevear* v. *Lynn*, 249 Mass. 486. The finding that there was no negligence on the part of the defendant was material on the question whether escape of sewage into the stream was the result of fault on the part of the defendant.

Neither the fact that the pondage areas had not been used for harvesting ice since 1888, nor the fact that the plaintiff had knowledge of the alleged pollution in the city of Brockton when he purchased the property, would deprive him of the right to maintain this suit. He has, however, no sound ground for objecting to the finding to the effect that if the waters were pure and unpolluted no profitable use of the premises for harvesting ice could have been made by him, nor to the finding that in 1888 the property of which he later became the owner was unfit for harvesting ice. In so far as the claim of the plaintiff is based upon pollution of the water so that his pondage areas could not be used for harvesting ice at a profit, the findings concerning the condition of the water at the plaintiff's property and its causes, when considered in connection with the finding that the defendant has caused him no damage, are conclusive against the plaintiff's contention. In so far as the pollution of the stream has been caused by surface water from the streets flowing into the stream, the plaintiff has established no right to equitable relief against the defendant. *Flagg* v. *Worcester*, 13 Gray, 601. *Dupuis* v. *Fall River*, 223 Mass. 73. So far as freshets are concerned, the finding that the defendant has been guilty of no negligence is conclusive in favor of the defendant on this issue, because that must mean that the freshets were so unusual or of such a nature that the defendant in constructing and maintaining the sewer system was not negligent in failing to foresee and guard against them. If the overflow caused by freshets resulted from a defect in the plan for the sewer system, the defendant would not be responsible for the results of such defect. The findings also relieve the de-

fendant from liability because of the break in a drain pipe near the stream.

The facts found which the plaintiff contends to be inconsistent with the general conclusion of the master, that upon all the testimony the defendant has not caused any damage to the plaintiff, fall short of showing that the defendant is under any liability to the plaintiff in this suit for such damage as he may have suffered, and, notwithstanding an apparent inconsistency in the statement of the findings, they lead to the same result and do not require us to say that the master's general conclusion in its legal effect was wrong.

Upon the findings the plaintiff has not maintained the burden of proving the facts which would entitle him to equitable relief. He has no ground to complain of the part of the interlocutory decree denying his motion to recommit the report. The exceptions not specifically mentioned herein relate to findings of fact which we cannot say were wrong or to matters which for other reasons do not require discussion.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*